HALLIE MANAGEMENT CO., A NEBRASKA CORPORATION, APPELLANT, V. GAIL PERRY, AN INDIVIDUAL, AND BAYLOR, EVNEN, CURTISS, GRIMIT & WITT, LLP, A NEBRASKA LIMITED LIABILITY PARTNERSHIP, APPELLEES.

718 N.W.2d 531

Filed July 28, 2006.    No. S-04-1436.

Clay M. Rogers and Edward F. Pohren, of Dwyer, Smith, Gardner, Lazer, Pohren, Rogers & Forrest, L.L.P., for appellant.

Michael J. Mooney and Gregory D. Marchant, of Gross & Welch, P.C., L.L.O., for appellees.

HENDRY, C.J., CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## NATURE OF CASE

Hallie Management Co. (Hallie) filed a legal malpractice action against Gail Perry and Baylor, Evnen, Curtiss, Grimit & Witt, LLP (Baylor), alleging that Perry and Baylor (hereinafter collectively appellees) failed to exercise due care in advising Hallie regarding the implementation of a motorized scooter policy at a Lincoln retirement community managed by Hallie. Hallie claimed that the actions of the appellees subjected Hallie to a housing discrimination lawsuit filed by the U.S. Department of Housing and Urban Development (HUD). The appellees sought discovery of documents related to the HUD lawsuit, and Hallie filed a motion for a protective order claiming the documents were protected by the attorney-client privilege and work product doctrine. The district court overruled Hallie's motion and ordered the documents to be made available to Perry and Baylor. Hallie appeals the order. We conclude that we are without jurisdiction to consider the appeal.

## FACTUAL AND PROCEDURAL BACKGROUND

The appellant, Hallie, manages Savannah Pines, an independent retirement community in Lincoln. After developing a written motorized scooter policy addendum (the Scooter Policy) to the Savannah Pines rental agreement, Hallie retained the services of Perry, an attorney with Baylor, to evaluate the Scooter Policy and advise Hallie as to whether the Scooter Policy complied with the law. On September 4, 2001, Perry sent a letter to Hallie, advising that proprietors must provide reasonable accommodation to disabled residents but that a policy permitting unlimited

scooter use would pose a greater liability risk than a policy limiting the residents' use of scooters.

In response to the Scooter Policy, several residents of Savannah Pines filed housing discrimination complaints with HUD. Subsequently, Perry sent Hallie another letter, advising Hallie to implement an amendment to the Scooter Policy, allowing scooters to be parked in the residence center rather than in the extended dining room. In November 2001, HUD filed a complaint (the HUD Complaint) against Hallie in federal district court. Perry represented Hallie in connection with the housing discrimination complaints until withdrawing in May 2002. In April 2003, Hallie agreed to a consent order, requiring payment of civil penalties, fines, and damages.

In August 2003, Hallie filed a complaint against the appellees, alleging legal malpractice in their evaluation of and advice regarding the Scooter Policy, which resulted in the charges filed by HUD, the expense of defending those charges, and the resulting penalties and fines required by the consent order, totaling $160,000.

In their answer, the appellees asserted, in part, that Hallie's Scooter Policy was not in violation of law and that Hallie had similarly denied any violation in its answer to the HUD Complaint. Further, the appellees asserted that Hallie agreed to the consent order to economically resolve the claim, avoid litigation costs, and establish a reputation as a facility accessible to disabled persons—not as a result of admitting guilt.

During discovery, the appellees issued a subpoena to the attorney who represented Hallie in the lawsuit filed by HUD, seeking to obtain documents pertaining to that representation. Hallie moved for a protective order, claiming that some of the documents were shielded by the attorney-client privilege and the work product doctrine. The parties entered into a stipulation in which Hallie agreed to release documents subject to the subpoena, with the exception of documents identified on a "Privilege Log" attached to the stipulation.

Subsequently, the appellees filed a motion to compel, asking the court to order Hallie to produce several documents identified on the Privilege Log. In response, Hallie filed another motion for protective order.

At a hearing on the motions, the parties agreed that the documents at issue were protected by the attorney-client privilege and work product doctrine. However, the appellees asserted that the protections of the attorney-client privilege and work product doctrine had been waived by Hallie.

At the request of the appellees, the court conducted an in camera review of the documents and sustained the appellees' motion to compel and overruled Hallie's motion for protective order, finding that the documents at issue were protected by the attorney-client privilege and work product doctrine but that Hallie had waived such protections. See *State v. Roeder*, 262 Neb. 951, 636 N.W.2d 870 (2001). Accordingly, the court ordered Hallie to produce the documents for inspection and photocopying by the appellees.

Hallie filed the present appeal, challenging the court's order compelling disclosure of the privileged documents.

## ASSIGNMENTS OF ERROR

Hallie assigns, restated, that the district court erred in determining that the elements set forth in *Roeder, supra*, were satisfied and that Hallie waived the protections of the attorney-client privilege and work product doctrine. Hallie also argues that "[c]ompelling disclosure of attorney-client communications will have a chilling effect on the client's willingness to give open and full disclosure of facts to its attorney for fear they may be disclosed in future unconsidered litigation." Brief for appellant at 14.

## STANDARD OF REVIEW

A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *State of Florida v. Countrywide Truck Ins. Agency*, 270 Neb. 454, 703 N.W.2d 905 (2005).

## ANALYSIS

Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Allied Mut. Ins. Co. v. City*

*of Lincoln*, 269 Neb. 631, 694 N.W.2d 832 (2005). For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken; conversely, an appellate court is without jurisdiction to entertain appeals from nonfinal orders. *Id.*

Although Hallie concedes that the order on appeal here is not a final order, see *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989), Hallie argues that this court nonetheless has jurisdiction to hear the appeal pursuant to the collateral order doctrine adopted in *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997). In contrast, the appellees argue that due to the absence of a final order, Hallie must wait to appeal the order until after final judgment or, alternatively, seek a peremptory writ of mandamus.

█ Generally, in the absence of a final order from which an appeal may be taken, the appeal must be dismissed for lack of jurisdiction. *Id.* However, in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 546, 69 S. Ct. 1221, 93 L. Ed. 1528 (1949), the U.S. Supreme Court announced a rule providing for appellate review of interlocutory orders that fall within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." In *Richardson, supra*, this court adopted the exception, allowing an appeal of an order granting a motion to disqualify counsel.

> "[I]f the appeal from an order of disqualification involves issues collateral to the basic controversy and if an appeal from a judgment dispositive of the entire case would not be likely to protect the client's interests, interlocutory review is appropriate."

*Id.* at 831, 560 N.W.2d at 435, citing *Maddocks v. Ricker; Casson*, 403 Mass. 592, 531 N.E.2d 583 (1988). See, also, *State of Florida v. Countrywide Truck Ins. Agency*, 270 Neb. 454, 703 N.W.2d 905 (2005); *Pennfield Oil Co. v. Winstrom*, 267 Neb. 288, 673 N.W.2d 558 (2004); *Trainum v. Sutherland Assocs.*, 263 Neb. 778, 642 N.W.2d 816 (2002).

█ The U.S. Supreme Court has set forth three elements that must be met for an order to fall within the collateral order

doctrine: "[T]he order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978). The Court has emphasized the modest scope of the collateral order doctrine, stating that

> the "narrow" exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994).

█ Here, the failure to meet the third condition of the collateral order doctrine, that the order be effectively unreviewable upon final judgment, forecloses Hallie's appeal. We join the majority of courts to have considered the question in holding that an interlocutory discovery order compelling the production of documents for which a claim of attorney-client privilege is asserted can be adequately reviewed on appeal from a final judgment and, thus, is not appealable under the collateral order doctrine. See, e.g., *Boughton v. Cotter Corp.*, 10 F.3d 746 (10th Cir. 1993); *Texaco Inc. v. Louisiana Land and Exploration Co.*, 995 F.2d 43 (5th Cir. 1993); *Chase Manhattan Bank, N.A. v. Turner & Newall, PLC*, 964 F.2d 159 (2d Cir. 1992); *Quantum Corp. v. Tandon Corp.*, 940 F.2d 642 (Fed. Cir. 1991); *Abrams v. Cades, Schutte, Fleming & Wright*, 88 Haw. 319, 966 P.2d 631 (1998); *Melia v. Hartford Fire Ins. Co.*, 202 Conn. 252, 520 A.2d 605 (1987). Cf. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997) (concluding that appellant in postjudgment appeal had waived issue of attorney disqualification by not appealing pursuant to collateral order rule, but reaching issue of discovery order compelling production of allegedly privileged documents).

We recognize that delayed appellate review of these orders does not entirely eliminate the breach of confidentiality that results from an erroneous order to disclose privileged information. However, the U.S. Supreme Court has stated that the jurisdiction

of appellate courts should not depend on a party's ability to characterize the right asserted as one that would be "irretrievably lost" if review were confined to final judgments only. See *Digital Equipment Corp., supra.*

> A fully litigated case can no more be untried than the law's proverbial bell can be unrung, and almost every pretrial or trial order might be called "effectively unreviewable" in the sense that relief from error can never extend to rewriting history. Thus, erroneous evidentiary rulings, grants or denials of attorney disqualification . . . and restrictions on the rights of intervening parties . . . may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment . . . and other errors, real enough, will not seem serious enough to warrant reversal at all, when reviewed after a long trial on the merits . . . . In still other cases, . . . an erroneous district court decision will, as a practical matter, sound the "death knell" for many plaintiffs' claims that might have gone forward if prompt error correction had been an option. But if immediate appellate review were available every such time, Congress's final decision rule would end up a pretty puny one, and so the mere identification of some interest that would be "irretrievably lost" has never sufficed to meet the third [requirement of the collateral order doctrine].

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 872, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994).

Thus, we must balance the potential harm of delaying appeal from orders compelling the production of documents over claims of privilege to final judgment, against the harm caused by the delay certain to result if interlocutory review of such orders is permitted. This third condition of the collateral order doctrine simply cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement. *Id.*

In most cases, as in this case, a court's decision to compel production of potentially privileged documents can be effectively reviewed on appeal from a final judgment, at which time, the appellate court, if it determines that production of the documents was erroneously compelled, may reverse the judgment and order

a new trial, prohibiting any use of the documents and any evidence obtained as a result of their disclosure. See *Boughton v. Cotter Corp.*, 10 F.3d 746 (10th Cir. 1993). Alternatively, if every order compelling the production of documents over claims of privilege were appealable, the litigation process would be significantly delayed, decreasing judicial efficiency and increasing costs of litigation. See, *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989); *Abrams v. Cades, Schutte, Fleming & Wright*, 88 Haw. 319, 966 P.2d 631 (1998).

Thus, any harm resulting from the occasional erroneous discovery order that might have been corrected, if interlocutory appeals had been available, is outweighed by the delay and disruption that would occur in the litigation process if we were to allow appeals from every discovery order claimed to implicate privilege. Furthermore, allowing interlocutory appeals from orders compelling the disclosure of privileged documents would interfere with the trial court's duty to oversee the discovery process. See *Abrams, supra*. Cf. *Greenwalt v. Wal-Mart Stores*, 253 Neb. 32, 567 N.W.2d 560 (1997) (describing discovery process with respect to allegedly privileged materials). We do not intend to minimize the harm that may be occasioned by an erroneous attorney-client privilege ruling. However, when the harm of delaying the correction of an occasional erroneous discovery order is balanced against the institutional harm that would be produced by allowing wholesale interlocutory appeals from this type of a disputed discovery order, we determine that the remedies available after appeal from a final judgment are sufficient to preclude application of the collateral order doctrine.

## CONCLUSION

For the foregoing reasons, we conclude that the district court's order compelling Hallie to produce the documents requested by the appellees is not reviewable under the collateral order doctrine, and accordingly, we dismiss the appeal.

APPEAL DISMISSED.

WRIGHT, J., not participating.