STATE OF NEBRASKA, APPELLANT, V.
JUNEAL DALE PRATT, APPELLEE.

733 N.W.2d 868

Filed June 29, 2007.    No. S-05-1207.

Jon Bruning, Attorney General, J. Kirk Brown, Donald W. Kleine, and Susan J. Gustafson for appellant.

James R. Mowbray and Jerry L. Soucie, of Nebraska Commission on Public Advocacy, for appellee.

HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

WRIGHT, J.

## NATURE OF CASE

Juneal Dale Pratt was convicted in 1975 of sodomy, forcible rape, and two counts of robbery. The victims of Pratt's crimes were sisters, and we will refer to them throughout this opinion individually as "Victim A" and "Victim B."

In June 2004, Pratt filed a motion under the DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 to 29-4125 (Cum. Supp. 2006). The Douglas County District Court authorized DNA testing of the victims' clothing still remaining in the custody of the State. After receiving these test results, Pratt sought a certification from the district court authorizing an out-of-state deposition with a subpoena duces tecum of Victim A in order to obtain a known sample of her DNA. The district court granted Pratt's motion, and from this order, the State appeals.

## SCOPE OF REVIEW

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Hallie Mgmt. Co. v. Perry*, 272 Neb. 81, 718 N.W.2d 531 (2006).

■ When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent of the decisions made by the lower courts. *In re Interest of Jedidiah P.*, 267 Neb. 258, 673 N.W.2d 553 (2004).

## FACTS

Pratt was convicted in 1975 of sodomy, forcible rape, and two counts of robbery. See, generally, *State v. Pratt*, 197 Neb. 382, 249 N.W.2d 495 (1977) (affirming convictions and sentences on direct appeal); *State v. Pratt*, 224 Neb. 507, 398 N.W.2d 721 (1987) (affirming denial of motion for postconviction relief).

In June 2004, Pratt filed his operative motion requesting DNA testing. In accordance with the DNA Testing Act, the State filed an inventory of evidence in the State's custody. Pratt then moved the district court to authorize DNA testing of the victims' clothing that was within the control and custody of the State. He alleged that the results of such testing could exclude him as the assailant.

The district court authorized DNA testing, and the University of Nebraska Medical Center's human DNA identification laboratory conducted tests on shirts worn by the victims the day of the crime. The laboratory employed an extraction procedure to separate epithelial fractions from sperm fractions. Only one specimen generated an inconclusive, partial DNA profile coming from sperm. DNA profiles from epithelial (skin) cells were detected and referenced against a buccal swab sample provided by Pratt. Pratt was excluded as the source of the only specimen that generated an epithelial DNA profile most consistent with a profile originating from a male individual. Several specimens generated partial epithelial DNA profiles consistent with originating from a mixture of female and male individuals. Given the absence of female reference profiles, results concerning any male contributors were inconclusive.

After receiving the results from the DNA tests, Pratt filed a motion in June 2005 seeking certification for an out-of-state witness under Neb. Rev. Stat. §§ 29-1904 and 29-1906 to 29-1911 (Reissue 1995). He asked the district court to authorize a deposition duces tecum of Victim A, who resided in Colorado, in order to obtain a known sample of her DNA. Pratt alleged that the prior DNA test results showed the presence of mixed samples of DNA and that known DNA profiles from the victims would make it possible to determine which alleles on the victims' clothing could have been left by the assailant and whether Pratt could be excluded as the source of the male component of the mixed samples. The State moved the court for a protective order, alleging that the requested deposition would cause annoyance, embarrassment, and an undue burden on Victim A.

At a hearing, Pratt introduced the DNA test results and a copy of a Colorado statute that prescribed the manner in which

a resident could be summoned to testify in another state in a pending criminal prosecution or an ongoing grand jury investigation. Pratt's attorney explained that he wanted to obtain DNA profiles from the victims so their DNA could be eliminated from the mixed samples. Pratt's attorney asserted that if the court authorized the requested deposition of Victim A, she would be asked to provide a DNA swab from the inside of her cheek and would be asked for the current address of Victim B, her sister.

The State argued that DNA samples from the victims were unnecessary because the test results had already excluded Pratt as the donor of the tested epithelial cells. The State claimed however that the DNA test results failed to exculpate Pratt from the crime because the laboratory had tested skin cells on shirts that had been handled by many people, possibly including police officers, prosecutors, or jurors. It argued that additional evidence in the record, including evidence that Pratt was found with a ring belonging to one of the victims, proved Pratt was the perpetrator.

The district court sustained Pratt's motion and issued an order captioned "Certification for Out-of-State Witness [Victim A]." Therein, the district court requested that the appropriate court of record in the State of Colorado issue a subpoena duces tecum, along with a copy of the district court's certificate, ordering Victim A to attend a deposition and provide a sample of DNA. (We note that on page 3 of the order, the court incorrectly made reference to Victim B.)

The State appealed the district court's order to the Nebraska Court of Appeals. We granted Pratt's petition to bypass review by the Court of Appeals, and the appeal was transferred to our docket.

## ASSIGNMENTS OF ERROR

The State asserts that the district court erred (1) in finding that the DNA Testing Act provides for obtaining and testing new evidence that has not been in the custody and control of the State and (2) in finding that criminal procedure rules are applicable to proceedings under the DNA Testing Act.

## ANALYSIS

### FINAL ORDER RULE

Under Nebraska law, an appellate court acquires no jurisdiction if no final order has been entered by the court from which the appeal was taken. Discovery orders are generally not considered final orders and, therefore, are not normally appealable. The district court sustained Pratt's motion for certification for an out-of-state witness, which was a discovery request. The question is whether the order for discovery was a final, appealable order, conferring appellate jurisdiction on this court.

■ Pratt argues that no appellate jurisdiction exists because the order appealed from was not a final order. The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003). The State concedes that the order at issue did not determine the action and prevent a judgment. Nor was the order made on summary application in an action after a judgment was issued. Accordingly, the order in this case was a final order only if it affected a substantial right and was made during a special proceeding. We begin by considering the proceeding in which the order was entered.

Special proceedings entail civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes and have also been described as every special statutory remedy which is not in itself an action. *Bronson, supra*. In *Bronson*, we concluded that a hearing under § 29-4123(2) is a "special proceeding" within the meaning of the final order statute. Subsection 29-4123(2) provides for a hearing under the DNA Testing Act if test results exonerate or exculpate a person. It is important to note that there has been no hearing in this case to vacate or set aside the judgment, as described under the DNA Testing Act in § 29-4123(2). Rather, Pratt alleged that he

intended to use the results of the requested DNA testing of new evidence to vacate his convictions pursuant to § 29-4123 or to seek a new trial pursuant to Neb. Rev. Stat. § 29-2101(6) (Cum. Supp. 2006).

Pratt argues that the district court order to secure the attendance of an out-of-state witness was not made in a special proceeding because he alleges that proceedings under the DNA Testing Act are criminal in nature, not civil. We have addressed whether proceedings under the DNA Testing Act are civil or criminal only indirectly.

In *State v. Poe*, 271 Neb. 858, 717 N.W.2d 463 (2006), a defendant moving for postconviction DNA testing asserted that he was deprived of his right to counsel guaranteed by the Sixth Amendment to the U.S. Constitution. This court rejected that assertion and found no constitutional right to counsel in an action under the DNA Testing Act. We reasoned that an "action under the DNA Testing Act is a collateral attack on a conviction and is therefore similar to a postconviction action and is not part of the criminal proceeding itself." *Poe*, 271 Neb. at 865, 717 N.W.2d at 469. In *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993), we held that postconviction relief is not part of the criminal proceeding and is considered civil in nature. It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction. See, also, *Pennsylvania v. Finley*, 481 U.S. 551, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (finding that prisoners have no constitutional right to attorney when mounting collateral attacks upon their convictions).

Using such reasoning, we conclude that the action before us is a collateral attack upon Pratt's convictions. The purpose of the DNA Testing Act is to provide an opportunity for persons who may have been wrongfully convicted to establish their innocence through DNA testing. See § 29-4117. Accordingly, Pratt's argument that the proceedings were criminal in nature is without merit. The proceedings were civil in nature, and we conclude that the certification order was made in a special proceeding.

Because we have determined that this was a special proceeding, the certification to secure an out-of-state witness was an appealable order if it affected a substantial right. A

substantial right is an essential legal right, not a mere technical right. *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003). A substantial right is affected if an order affects the subject matter of the litigation, such as diminishing a claim or defense that was available to the appellant prior to the order from which he or she is appealing. *State v. Meese*, 257 Neb. 486, 599 N.W.2d 192 (1999).

The State asserts that the order requiring Victim A to supply a DNA sample affected a substantial right and that the order could not be meaningfully reviewed at the conclusion of this action. The State claims the order affected the subject matter of the litigation—DNA testing of biological material under the DNA Testing Act—because if the order is allowed to stand, the State's defense will be diminished. The State further claims that the DNA testing requested by Pratt falls outside the bounds of the act. It also claims that the victims have a constitutional right to privacy, which will be undermined if they are compelled to provide DNA samples.

In the present case, it is difficult to determine what substantial right exists *in favor of the State* to oppose the discovery request, as compared to the right which may exist *in favor of the victim* to object to the discovery request. While there may be merit to the State's argument that the DNA Testing Act does not provide for Pratt's discovery request, under our long-established approach to discovery issues, we do not reach that issue in this appeal.

Orders requiring or denying discovery generally do not constitute a final disposition of the proceedings and, therefore, are not normally appealable. *State v. El-Tabech*, 259 Neb. 509, 610 N.W.2d 737 (2000). In *Brozovsky v. Norquest*, 231 Neb. 731, 437 N.W.2d 798 (1989), plaintiffs in a breach-of-contract action filed a notice to take the deposition of a nonparty and a subpoena duces tecum was issued. The defendant objected and alleged that an attorney-client relationship existed between the nonparty and the defendant and that the plaintiffs sought to discover privileged information. The trial court found that the attorney-client privilege had been waived and ordered the deposition. The defendant appealed, and the issue before this court was whether a final order existed.

■ We concluded that the order directing the nonparty to testify at the deposition was interlocutory and dismissed the appeal. In reaching this determination, we reviewed the general rules applicable to discovery orders and found:

"A discovery order . . . is normally merely an interlocutory order in the course of proceedings and is not appealable. . . .

"Ordinarily an order regarding discovery against a person not a party to the action is not appealable. The order is interlocutory insofar as it affects the party seeking discovery. It is final so far as the nonparty is concerned but if discovery is denied he has no need for review and if discovery is granted it is said that his remedy is to defy the order and appeal from a contempt judgment against him. . . ."

*Brozovsky*, 231 Neb. at 734, 437 N.W.2d at 800. Accord 8 Charles Alan Wright et al., Federal Practice and Procedure § 2006 (2d ed. 1994). We further opined that "'[i]nterlocutory appeals in civil cases will place an undue burden on the courts and delay the ultimate disposition of the litigation.'" *Id.* at 736, 437 N.W.2d at 801.

We conclude that the certification order was not a final, appealable order.

### COLLATERAL ORDER DOCTRINE

■ At oral argument, the State argued that if the order compelling discovery was not a final order, then it should nevertheless be immediately reviewable under the collateral order doctrine. To fall within the collateral order doctrine, an order must conclusively determine the disputed question, resolve an important issue completely separate from the merits of the action, and be effectively unreviewable on appeal from a final judgment. *Hallie Mgmt. Co. v. Perry*, 272 Neb. 81, 718 N.W.2d 531 (2006).

The collateral order doctrine is not applicable in the present case. The issue involved—i.e., obtaining a DNA sample from Victim A—is not completely separate from the merits of the action. The certification order arose from proceedings initiated by Pratt under the DNA Testing Act. Pratt maintains that he is

entitled to obtain the testing under the DNA Testing Act. Thus, the issue is enmeshed in the merits of the action, not separate from them. The order regarding the discovery is effectively reviewable on appeal from the final judgment in this action. The State has no right of appeal at this point in the proceedings. Ordinarily, an order regarding discovery against a person not a party to the action is not appealable.

The U.S. Supreme Court has emphasized the narrow application of the collateral order doctrine:

> [T]he "narrow" exception should stay that way and never be allowed to swallow the general rule . . . that a party is entitled to a single appeal, to be deferred until final judgment has been entered, in which claims of district court error at any stage of the litigation may be ventilated.

*Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868, 114 S. Ct. 1992, 128 L. Ed. 2d 842 (1994).

## CONCLUSION

The certification to secure the attendance of an out-of-state witness entered by the district court was not a final, appealable order. Therefore, this appeal is dismissed.

APPEAL DISMISSED.

HEAVICAN, C.J., concurring.

In its discovery order, the district court allowed the certification of an out-of-state witness for purposes of obtaining a DNA sample from that witness. The purported authority for such order was the DNA Testing Act.[1] Though I concur with the result reached by the majority that we are not presented with a final order, I write separately to comment upon the parameters of the DNA Testing Act.

This court has held that any rights conferred for postconviction DNA testing are statutory, not constitutional or from the common law.[2] Thus, a criminal defendant's right to such testing is limited to that which is provided for by statute. Section 29-4120(1) provides that a person in custody may request DNA testing of biological material only if the biological material

---

[1] Neb. Rev. Stat. § 29-4116 et seq. (Cum. Supp. 2006).

[2] See *State v. El-Tabech*, 259 Neb. 509, 610 N.W.2d 737 (2000).

  (a) [i]s related to the investigation or prosecution that resulted in such judgment;

  (b) [i]s in the actual or constructive possession or control of the state or is in the possession or control of others under circumstances likely to safeguard the integrity of the biological material's original physical composition; and

  (c) [w]as not previously subjected to DNA testing or can be subjected to retesting with more current DNA techniques that provide a reasonable likelihood of more accurate and probative results.

Absent a showing to the contrary, an appellate court will give statutory language its plain and ordinary meaning.[3] Generally, the word "and," used properly, is conjunctive.[4] It is therefore clear that under § 29-4120, all three threshold requirements must be met; unless all three requirements are met, no testing is permitted.

It is also clear that the intent of the DNA Testing Act was to provide a mechanism for DNA testing of evidence retained from the original investigation and prosecution. Section 29-4120(1)(a) specifically provides that the material must be "related to the investigation or prosecution that resulted in such judgment." In its findings, the Legislature noted that "DNA testing has emerged as the most reliable forensic technique for identifying persons *when biological material is found at a crime scene* or transferred from the victim to the person responsible and *transported from the crime scene*."[5] The Legislature also found "a compelling need to ensure the *preservation* of biological material for postconviction DNA testing."[6]

A review of the DNA Testing Act reveals no provision permitting the taking of depositions, as was requested by Pratt in the instant case. Nor does the act include any mechanism by which new evidence may be gathered and tested. There is no mention in the act of granting criminal defendants the ability to

---

[3] *City of Elkhorn v. City of Omaha*, 272 Neb. 867, 725 N.W.2d 792 (2007).

[4] See *Baker's Supermarkets v. State*, 248 Neb. 984, 540 N.W.2d 574 (1995).

[5] § 29-4118(1) (emphasis supplied).

[6] § 29-4118(7) (emphasis supplied).

take genetic samples from victims or witnesses, or any indication that the definition of biological materials was intended to include anything other than those materials collected in connection with the original prosecution. As such, there was no statutory basis to support the granting of Pratt's motion for certification of an out-of-state witness.

MILLER-LERMAN, J., concurring.

Although I concur in the result reached by the majority opinion to dismiss this appeal, I write separately to comment on what I believe is a fundamental problem in this matter. The proceeding giving rise to this appeal was filed under the DNA Testing Act, Neb. Rev. Stat. §§ 29-4116 through 29-4125 (Cum. Supp. 2006). We have stated that a proceeding under the DNA Testing Act is a collateral attack on a conviction and is, therefore, similar to a postconviction action and is not part of the criminal proceeding itself. *State v. Poe*, 271 Neb. 858, 717 N.W.2d 463 (2006). Therefore, the instant matter is not a criminal proceeding.

On June 20, 2005, Juneal Dale Pratt, appellee, filed a pleading in connection with his DNA Testing Act proceeding entitled "Motion for Certification for Out-of-State Witness," stating that the "motion is filed pursuant to Neb. Rev. Stat. § 29-1904 (Reissue 1995), Neb. Rev. Stat. § 29-1906 *et seq.* (Reissue 1995)." Article 19, chapter 29, of the Nebraska Revised Statutes relating to criminal cases is entitled "Preparation for Trial," and, importantly, Neb. Rev. Stat. §§ 29-1906 to 29-1911 (Reissue 1995) are cited as the "Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings," § 29-1911. I would conclude that a motion under §§ 29-1904 and 29-1906 to 29-1911 may be filed in a criminal proceeding, but not in a DNA Testing Act proceeding which is not a part of the criminal proceeding itself. Given this conclusion, the motion filed by Pratt giving rise to this appeal was not an authorized motion in the noncriminal DNA Testing Act proceeding in connection with which it was filed. Nevertheless, the order on appeal may be characterized as an interlocutory, nonappealable discovery order and I, therefore, agree with the decision of the majority opinion which concludes that in the absence of an appealable order, this court lacks jurisdiction.

STEPHAN, J., joins in this concurrence.