Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/20/2018 08:12 AM CDT

D.M., appellee, v. State of Nebraska et al.,
appellees, and Geoff Britton and
Michael L. Kenney, appellants.

___ N.W.2d ___

Filed March 13, 2018.    No. A-16-587.

1. **Jurisdiction: Appeal and Error.** An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law.
2. **Motions to Dismiss: Appeal and Error.** A district court's denial of a motion to dismiss is reviewed de novo.
3. ____: ____. An appellate court reviewing the denial of a motion to dismiss accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions.
4. **Jurisdiction: Appeal and Error.** Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it.
5. **Final Orders: Appeal and Error.** Generally, only final orders are appealable.
6. ____: ____. Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered.
7. **Motions to Dismiss: Final Orders.** Denial of a motion to dismiss is not a final order.
8. **Final Orders.** The collateral order doctrine is an exception to the final order rule.
9. **Final Orders: Immunity: Appeal and Error.** Under the collateral order doctrine, the denial of a claim of qualified immunity is appealable,

notwithstanding the absence of a final judgment, if the denial of immunity turns on a question of law.

10. **Civil Rights: Public Officers and Employees: Immunity.** Qualified immunity provides a shield from liability for public officials sued under 42 U.S.C. § 1983 (2012) in their individual capacities, so long as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

11. **Trial: Immunity.** Where appropriate, the issues relating to qualified immunity may be determined via a separate trial or evidentiary hearing.

12. **Final Orders: Appeal and Error.** In order to determine whether a case presents an order reviewable under the collateral order doctrine, an appellate court engages in a three-part inquiry: (1) whether the plaintiff has alleged the violation of a constitutional right, (2) whether that right was clearly established at the time of the alleged violation, and (3) whether the evidence shows that the particular conduct alleged was a violation of the right at stake.

13. **Immunity: Pretrial Procedure: Appeal and Error.** A district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact.

14. **Constitutional Law: Public Officers and Employees: Proof.** In order to succeed on a First Amendment retaliation claim, a plaintiff must show that (1) he or she engaged in a protected activity, (2) the government official took adverse action against him or her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity.

15. **Constitutional Law: Due Process: Proof.** The 14th Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies.

16. **Due Process: Prisoners.** An allegation by an inmate that his or her due process rights were violated by virtue of his or her placement in administrative segregation, without more, does not implicate a liberty interest. In order to rise to the level of a due process violation, the segregation must result in deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences.

17. **Equal Protection.** The Equal Protection Clause of the 14th Amendment commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike.

18. **Equal Protection: Prisoners: Discrimination: Proof.** Absent assertion of membership in a protected class or violation of a fundamental right, an equal protection claim arising from placement in segregation requires showing that similarly situated classes of inmates were treated differently, that difference in treatment bore no rational relation to any legitimate penal interest, and that there was intentional or purposeful discrimination.

19. **Constitutional Law: Prisoners.** The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment.

20. **Constitutional Law: Public Officers and Employees: Prisoners.** A prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious. This means that a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.

21. **Constitutional Law: Public Officers and Employees: Prisoners: Liability.** To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases, that state of mind is one of deliberate indifference to inmate health or safety, meaning that the prison official cannot be held liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference.

22. **Constitutional Law: Public Officers and Employees: Liability: Proof.** The standard by which a supervisor is held liable under 42 U.S.C. § 1983 (2012) in his or her individual capacity for the actions of a subordinate is extremely rigorous. The plaintiff must establish that the supervisor personally participated in the unconstitutional conduct or was otherwise the moving force of the violation by authorizing, approving, or knowingly acquiescing in the unconstitutional conduct.

Appeal from the District Court for Douglas County: J. Michael Coffey, Judge. Reversed in part, and in part dismissed.

Douglas J. Peterson, Attorney General, David A. Lopez, and Maddisen Ebert and Joshua Baumann, Senior Certified Law Students, for appellants.

Julie A. Jorgensen, of Morrow, Willnauer, Klosterman & Church, for appellee D.M.

Moore, Chief Judge, and Pirtle and Bishop, Judges.

Bishop, Judge.

## I. INTRODUCTION

While incarcerated at the Omaha Correctional Center, D.M. was sexually assaulted by a guard. D.M. sued the State, the Nebraska Department of Correctional Services (DCS), and various individual defendants in their official and individual capacities. This appeal involves two of those defendants, Geoff Britton (an investigator for the DCS) and Michael L. Kenney (warden of the Omaha Correctional Center), and the remaining constitutional claims pending against them. Both filed motions to dismiss the remaining claims for failure to state a claim, and both alleged they were entitled to qualified immunity as a matter of law. The district court for Douglas County overruled the motions, and Britton and Kenney filed interlocutory appeals challenging the district court's order denying their entitlement to qualified immunity.

Because D.M.'s First Amendment claim necessitates resolving a fact-related dispute, we conclude this part of the appeal is not immediately reviewable under the collateral order doctrine and we dismiss the appeal in part as to the First Amendment issue for lack of jurisdiction. However, we conclude D.M. failed to establish a violation of his 8th and 14th Amendment rights as to Britton and Kenney; therefore, they are entitled to qualified immunity on those claims. We reverse the district court's order to the extent it denied

Britton and Kenney qualified immunity on the 8th and 14th Amendment claims.

## II. BACKGROUND

Due to the procedural posture of this case, the facts considered are those alleged in D.M.'s amended complaint. D.M. states that he was sexually assaulted by Anthony Hansen, a guard, in the commons area of the Omaha Correctional Center. D.M. reported the sexual assault to Jim Brown, his unit manager, immediately after it occurred. D.M. also completed a formal complaint and grievance form. Thereafter, D.M. was placed in segregation for more than 30 days while corrections/prison officials investigated the allegations made against Hansen.

While in segregation, D.M. was isolated from the general population and allowed no contact with other inmates. He had limited telephone privileges and was instructed not to speak to anyone about his allegations, including friends and family. Prison guards were instructed not to speak with D.M. Britton repeatedly interrogated D.M. about the incident, told D.M. that he would get jail time for lying about Hansen, encouraged D.M. to change his story, and told D.M. that he was "ruining the life" of Hansen and Hansen's wife, who also worked at the facility.

Hansen was allowed to work for some time during the investigation, but was eventually placed on paid leave, while D.M. remained in segregation. D.M. requested that he be transferred to another facility rather than remain in segregation, but was told that there was no room and that he would not be transferred. D.M. repeatedly requested counseling services, but none were initially provided.

After the investigation, Hansen pled guilty to sexual assault. D.M. was then transferred from his minimum security facility to a maximum security facility with a "reputation for violence." After transfer and numerous requests, D.M. was approved for counseling and received two sessions before his release.

D.M. filed a complaint against the State in December 2013. D.M. brought tort claims for negligent hiring/supervising, failure to protect, and respondeat superior against the State and the DCS; Robert P. Houston (director of the DCS), Britton (then known as John Doe #1), and Brown, in both their individual and official capacities; and Hansen, in both his individual and official capacities. Several persons and entities filed a motion to dismiss pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6) for failure to state a claim and also on the ground of sovereign immunity. Filing the motion to dismiss were Houston, in both his individual and official capacities; the State; the DCS; and John Doe #1, Brown, and Hansen, in their official capacities only. See *D.M. v. State*, 23 Neb. App. 17, 867 N.W.2d 622 (2015), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). The district court dismissed D.M.'s entire complaint with prejudice, concluding that all of his claims were barred by sovereign immunity. *Id*. On appeal, we affirmed in part, and in part reversed and remanded for further proceedings, because we found that sovereign immunity did not apply to all of D.M.'s claims and all of the defendants. *Id*.

D.M. filed an amended complaint in December 2015 against the State; the DCS; and Houston, Britton (formerly John Doe #1), Kenney, Brown, and Hansen in their individual and official capacities. D.M. alleged six causes of action: (1) First Amendment retaliation (against all defendants), (2) violation of equal protection and due process (against all defendants), (3) cruel and unusual punishment (against all defendants) under the Nebraska and federal Constitutions, (4) intentional infliction of emotional distress (against Hansen only), (5) intentional infliction of emotional distress (against all defendants), and (6) negligent infliction of emotional distress (against all defendants).

In December 2015, the State and the DCS, along with Houston, Britton, Brown, and Hansen (in their official capacities only), filed a motion to dismiss the entire amended

complaint. The district court subsequently granted the motion in part, dismissing D.M.'s fifth cause of action (intentional infliction of emotional distress) and sixth cause of action (negligent infliction of emotional distress) with prejudice. As to Britton and Kenney, this left only the three constitutional claims.

In March 2016, Britton and Kenney filed identical motions to dismiss D.M.'s amended complaint for failure to state a claim upon which relief can be granted and/or because they were entitled to qualified immunity as a matter of law. After a hearing, the district court denied these motions on May 20. Britton and Kenney filed an interlocutory appeal from that order.

## III. ASSIGNMENTS OF ERROR

Britton and Kenney assign that the district court erred in (1) overruling their motions to dismiss on the ground of qualified immunity and (2) denying their individual assertions of qualified immunity without issuing an "individualized analysis" of each claim.

## IV. STANDARD OF REVIEW

[1] An appellate court determines jurisdictional questions that do not involve a factual dispute as a matter of law. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014).

[2] A district court's denial of a motion to dismiss is reviewed de novo. See *Brothers v. Kimball Cty. Hosp.*, 289 Neb. 879, 857 N.W.2d 789 (2015). See, also, *StoreVisions v. Omaha Tribe of Neb.*, 281 Neb. 238, 795 N.W.2d 271 (2011), *modified on denial of rehearing* 281 Neb. 978, 802 N.W.2d 420.

[3] An appellate court reviewing the denial of a motion to dismiss accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions. See *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017).

## V. ANALYSIS

[4-6] Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Hallie Mgmt. Co. v. Perry*, 272 Neb. 81, 718 N.W.2d 531 (2006). Generally, only final orders are appealable. *Carney, supra*. Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), the three types of final orders that an appellate court may review are (1) an order that affects a substantial right and that determines the action and prevents a judgment, (2) an order that affects a substantial right made during a special proceeding, and (3) an order that affects a substantial right made on summary application in an action after a judgment is rendered. *Carney, supra*.

[7-9] The present appeal is taken from the district court's order overruling Britton's and Kenney's motions to dismiss, both of which asserted D.M.'s amended complaint failed to state a claim upon which relief could be granted and/or claimed entitlement to qualified immunity as a matter of law. Denial of a motion to dismiss is not a final order. See *Hallie Mgmt. Co., supra*. However, the collateral order doctrine is an exception to the final order rule. *Carney, supra*. Britton and Kenney assert that our jurisdiction is proper under the collateral order doctrine. Under the collateral order doctrine, the denial of a claim of qualified immunity is appealable, notwithstanding the absence of a final judgment, if the denial of immunity turns on a question of law. *Carney, supra*.

### 1. Collateral Order Doctrine

We take a moment to address the status of the collateral order doctrine in Nebraska. Last year, the Nebraska Supreme Court decided *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017), wherein it overruled eight enumerated cases, originating with *Richardson v. Griffiths*, 251 Neb. 825, 560 N.W.2d 430 (1997), that allowed interlocutory appeals through the collateral order doctrine for orders disqualifying counsel in a civil case. The Supreme Court engaged in a detailed discussion

of the right to appeal in Nebraska, reiterating that the right is "'purely statutory.'" *Heckman*, 296 Neb. at 461, 894 N.W.2d at 299. "In other words, unless a statute provides for an appeal, such right does not exist. The right to appeal does not exist at common law." *Id*.

*Heckman, supra*, refers to *Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 105 S. Ct. 2757, 86 L. Ed. 2d 340 (1985), wherein the U.S. Supreme Court made clear that the collateral order doctrine is a narrow exception limited to trial court orders affecting rights that would be irretrievably lost in the absence of an immediate appeal. To fall within the federal collateral order doctrine, an order must (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action, and (3) be effectively unreviewable on appeal from final judgment. See *id. Heckman* concluded that orders disqualifying counsel in civil cases did not satisfy the third requirement.

Although *Heckman, supra*, eliminated the use of the collateral order doctrine to file interlocutory appeals from orders disqualifying counsel, we do not read *Heckman* to eliminate the collateral order doctrine for appeals concerning qualified immunity. We reach this conclusion for several reasons. First, in *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014), our Supreme Court concluded it had jurisdiction under the collateral order doctrine over an appeal from an order denying a motion for summary judgment which involved a claim of qualified immunity. Ordinarily, an appeal from an order denying summary judgment is not a final, appealable order; however, under the collateral order doctrine, the denial of a claim of qualified immunity may be appealable if it presents only questions of law. See *id*. Second, the cases specifically enumerated and overruled in *Heckman, supra*, considered the collateral order doctrine as it related to interlocutory appeals from attorney disqualification orders, and it did not specifically overrule *Carney, supra*, and its application of the doctrine to qualified immunity appeals. Finally, the U.S. Supreme Court

and the Nebraska Supreme Court have emphasized the importance of resolving qualified immunity questions at the earliest possible stage in litigation. See *Hunter v. Bryant*, 502 U.S. 224, 112 S. Ct. 534, 116 L. Ed. 2d 589 (1991). See, also, *Waldron v. Roark*, 298 Neb. 26, 902 N.W.2d 204 (2017) (noting that both U.S. Supreme Court and Eighth Circuit Court of Appeals have repeatedly stressed importance of resolving immunity questions at earliest possible stage in litigation; those entitled to qualified immunity hold more than mere defense to liability, they hold entitlement not to stand trial or face other burdens of litigation and if case is erroneously permitted to go to trial, then qualified immunity is effectively lost). Accordingly, having determined that *Heckman v. Marchio*, 296 Neb. 458, 894 N.W.2d 296 (2017), did not abrogate the collateral order doctrine with respect to appeals involving qualified immunity which present purely questions of law, we turn to Britton's and Kenney's claims of qualified immunity raised in the present appeal.

## 2. Qualified Immunity

[10,11] Qualified immunity provides a shield from liability for public officials sued under 42 U.S.C. § 1983 (2012) in their individual capacities, so long as the official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). In some instances, it might be unclear, based upon the record before a court, whether a defendant is entitled to qualified immunity. *Williams v. Baird*, 273 Neb. 977, 735 N.W.2d 383 (2007). In those instances, "'[a] hearing would likely clarify the matter. It may be that resolution of the qualified immunity defense . . . depends upon the resolution of disputed fact issues or on a credibility determination. . . .'" *Id.* at 986, 735 N.W.2d at 391 (quoting *Johnson v. Garraghty*, 57 F. Supp. 2d 321 (E.D. Va. 1999)). Thus, where appropriate, the issues relating to qualified immunity may be determined via a separate trial or evidentiary hearing. *Carney, supra*.

[12] In order to determine whether a case presents an order reviewable under the collateral order doctrine, an appellate court engages in a three-part inquiry. *Carney, supra*. First, we determine whether the plaintiff has alleged the violation of a constitutional right. *Id.* Second, we determine whether that right was clearly established at the time of the alleged violation. *Id.* Finally, we determine whether the evidence shows that the particular conduct alleged was a violation of the right at stake. *Id.* The first two inquiries are questions of law; the last could require factual determinations to the extent that evidence is in conflict. *Id*.

Determining whether the plaintiff alleged a violation of a constitutional right and whether that right was clearly established are questions of law. *Id.* Evaluating whether the evidence shows that the particular conduct alleged violated the right at stake could require factual determinations to the extent that evidence is in conflict. See *id.* If this analysis requires factual determinations, it is not purely a question of law and we lack jurisdiction to review the denial of qualified immunity under the collateral order doctrine. See *id.*

We first consider the district court's order denying Britton's and Kenney's motions to dismiss based on assertions of qualified immunity.

### (a) District Court's Order
### Regarding Immunity Claims

The State asserts that the district court erred in failing to issue a reasoned, thorough, and individualized analysis of Britton's and Kenney's qualified immunity claims. In both motions to dismiss, Britton and Kenney each asserted he was "entitled to qualified immunity as a matter of law." It has been held that officials are entitled to a thorough determination of their claims of qualified immunity if that immunity is to mean anything at all. *Saylor v. Nebraska*, 812 F.3d 637 (8th Cir. 2016). A thorough determination discusses all of the claims litigated. *Id.*

In this case, the district court's order stated:

> On the 14th day of April, 2016 the motions to dismiss of . . . Kenney and . . . Britton came on for hearing. The parties appeared by counsel. Arguments were made and the matters were taken under advisement.
>
> The Court finds that the motions of . . . Kenney and Britton should be overruled and denied.

The State argues that the district court's failure to make a reasoned, thorough, and individualized analysis of Britton's and Kenney's qualified immunity assertion warrants remanding the cause to the district court for such determinations in the event this court declines to consider the issues. We elect to consider the qualified immunity claims under the framework of *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). Accordingly, we will consider whether (1) D.M. alleged the violation of a constitutional right, (2) whether that right was clearly established at the time of the alleged violation, and (3) whether the evidence shows that the particular conduct alleged was a violation of the right at stake. See *id.* We keep in mind that the first two inquiries present questions of law and that the last could require factual determinations to the extent the evidence is in conflict. See *id.*

As discussed further below, we conclude we have jurisdiction over the 8th and 14th Amendment claims and can address qualified immunity as to those allegations. However, we begin with D.M.'s First Amendment claim and conclude we do not have jurisdiction to immediately review Britton's and Kenney's claims of qualified immunity under the collateral order doctrine as to D.M.'s retaliation claim.

### (b) First Amendment Retaliation

D.M. claims that he engaged in constitutionally protected speech when he reported the sexual assault. He further claims that in retaliation for his report, he was placed in segregation, guards were instructed not to speak to him or acknowledge him, and his privileges and his contact with others

were limited or excluded entirely, all in violation of his First Amendment rights.

The right to be free from retaliation for utilizing a prison grievance process is a right protected by the First Amendment. See *Santiago v. Blair*, 707 F.3d 984 (8th Cir. 2013). Therefore, D.M. has alleged a violation of a constitutionally protected right based on his allegation that his report of the sexual assault by Hansen subjected him to segregation and the other conditions described above. The first portion of the collateral order jurisdictional analysis set forth in *Carney, supra*, is satisfied. Next, we consider whether this right was clearly established at the time of the alleged violation.

For a right to be "'clearly established,'" the contours of the right must be sufficiently clear that a reasonable official would understand that what he was doing violates that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987). The right to be free from retaliation when using a prison grievance system was clearly established at the time of the alleged violation. See, *Nelson v. Shuffman*, 603 F.3d 439 (8th Cir. 2010) (holding that plaintiff who allegedly was held in isolation in structurally unfinished and inadequate ward and deprived of access to legal counsel, mail, family, recreation, and telephone calls demonstrated sufficient deprivations to survive summary judgment on First Amendment retaliation claim); *Cooper v. Schriro*, 189 F.3d 781 (8th Cir. 1999) (allegation correctional officer shut off water for 5 days because prisoner used prison grievance system sufficient to state retaliation claim); *Burgess v. Moore*, 39 F.3d 216 (8th Cir. 1994) (threat made in retaliation for prisoner's use of prison grievance system sufficient to state First Amendment retaliation claim). D.M.'s amended complaint alleged a violation of a clearly established constitutional right, and therefore, the first two requirements of the collateral order jurisdictional analysis for D.M.'s First Amendment retaliation claim are satisfied.

[13] The third factor requires us to determine whether the evidence shows that the particular alleged conduct was a violation of the right at stake. A district court's pretrial rejection of a qualified immunity defense is not immediately appealable to the extent that it turns on either an issue of fact or an issue perceived by the trial court to be an issue of fact. *Carney v. Miller*, 287 Neb. 400, 842 N.W.2d 782 (2014). Although the district court did not provide any insight as to why it rejected Britton's and Kenney's motions to dismiss, we conclude that for purposes of a motion to dismiss, an analysis of D.M.'s First Amendment claim requires factual determinations and cannot be decided as a matter of law, as discussed next.

[14] In order to succeed on a First Amendment retaliation claim, D.M. must show that (1) he or she engaged in a protected activity, (2) the government official took adverse action against him or her that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity. See *Saylor v. Nebraska*, 812 F.3d 637 (8th Cir. 2016).

As discussed above, utilizing the prison grievance procedures to report the sexual assault was a protected activity, satisfying the first prong of the First Amendment retaliation analysis. However, determining whether Britton and Kenney engaged in adverse actions which would chill a person of ordinary firmness from using the prison grievance system and, if there were such adverse actions, determining whether such actions were motivated at least in part by D.M. filing his report present issues of fact. There is insufficient information at this stage of the proceedings to know whether any of the actions attributed to Britton and/or Kenney were designed to keep D.M. safe and preserve the integrity of the ongoing investigation or whether such actions were retaliatory in nature. These are issues of fact yet to be resolved. And as set forth in *Carney, supra*, an appellate court lacks jurisdiction over qualified immunity appeals under the collateral order

doctrine that turn on issues of fact. Therefore, we conclude this part of the appeal is not immediately reviewable under the collateral order doctrine and we dismiss the appeal for lack of jurisdiction as to the First Amendment issue.

### (c) Equal Protection and Due Process

D.M.'s second cause of action is titled "Violation of Equal Protection and Due Process." Within this cause of action, D.M. alleged that he was "subjected to atypical and significant hardship that other prisoners did not suffer, specifically shunning and lack of verbal contact with any human within the prison, except for verbal contact in the form of repeated interrogations and threats of prosecution." He further alleged that he was treated differently than other inmates placed in segregation and that there was no rational basis for such treatment. This language indicates separate claims for due process and equal protection under the 14th Amendment. (We note that D.M. includes the Fifth Amendment when making allegations in his amended complaint related to Due Process and Equal Protection, but as noted by the State in its brief, the Fifth Amendment only restrains the federal government and neither Britton nor Kenney are federal employees. See *Livers v. Schenck*, 700 F.3d 340 (8th Cir. 2012).)

### (i) Due Process

[15] The 14th Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 125 S. Ct. 2384, 162 L. Ed. 2d 174 (2005). D.M. did not allege deprivation of his life or property. He alleged violations of a protected liberty interest, e.g., he suffered "atypical and significant hardship." A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies. *Id.*

The Constitution does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Id.* However, a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations. *Id.* But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995).

[16] Absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim. *Pichardo v. Kinker*, 73 F.3d 612 (5th Cir. 1996). An allegation by an inmate that his due process rights were violated by virtue of his or her placement in administrative segregation, without more, does not implicate a liberty interest. *Christianson v. Clarke*, 932 F. Supp. 1178 (D. Neb. 1996). In order to rise to the level of a due process violation, the segregation must result in "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman v. Thalacker*, 83 F.3d 970, 972 (8th Cir. 1996).

We conclude that we have jurisdiction over D.M.'s due process claim under the collateral order doctrine because it does not present an issue of fact. D.M.'s allegation that his placement into segregation, and the conditions associated with that, may have presented more difficult conditions than the general prison population. However, such allegations fail to establish a due process claim as a matter of law. As we noted above, the segregation must result in "deprivations which work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Moorman*,

83 F.3d at 972. D.M. failed to allege facts that rise to this legal threshold, and thus, Britton and Kenney are entitled to qualified immunity on D.M.'s due process claim.

### (ii) Equal Protection

D.M. also alleged violations of his 14th Amendment right to equal protection. D.M.'s allegation of an equal protection violation consists of one sentence: "[D.M.] was also treated differently than other inmates placed in segregation and there was no rational basis for [his] treatment."

[17,18] The Equal Protection Clause of the 14th Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). However, prison administrators should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). Absent assertion of membership in a protected class or violation of a fundamental right, an equal protection claim arising from placement in segregation requires showing that similarly situated classes of inmates were treated differently, that difference in treatment bore no rational relation to any legitimate penal interest, and that there was intentional or purposeful discrimination. See *Phillips v. Norris*, 320 F.3d 844 (8th Cir. 2003).

We conclude we have jurisdiction over the equal protection claim under the collateral order doctrine because it does not present a factual issue, as D.M. did not allege a valid claim as a matter of law. D.M. did not allege that he is a member of a protected class and did not allege a violation of a fundamental right. Although D.M. did allege that he was treated differently than other inmates in segregation, he alleged no facts to

describe or support this allegation. We cannot conclude that his treatment had no rational relation to a legitimate penal interest or that his treatment constituted purposeful or intentional discrimination for purposes of his equal protection claims. D.M. failed to allege facts that rise to this legal threshold, and thus, Britton and Kenney are entitled to qualified immunity on the 14th Amendment equal protection claim.

### (d) Cruel and Unusual Punishment

D.M. alleged that his time and treatment in segregation was cruel and unusual punishment because he was subjected to more than 30 days in total isolation with his only verbal contact coming in the form of interrogation and threats. He further alleged that the sexual assault by Hansen constituted cruel and unusual punishment.

[19] The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994). The Eighth Amendment imposes duties on prison officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measure to guarantee the safety of inmates. *Farmer, supra*. Some conditions of confinement may establish an Eighth Amendment violation in combination when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. *Wilson v. Seiter*, 501 U.S. 294, 111 S. Ct. 2321, 115 L. Ed. 2d 271 (1991).

[20,21] A prison official violates the Eighth Amendment only when two requirements are met. *Farmer, supra*. First, the deprivation alleged must be, objectively, sufficiently serious.

*Id.* This means that a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. *Id.* The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Farmer, supra*. To violate the Cruel and Unusual Punishment Clause, a prison official must have a sufficiently culpable state of mind. *Farmer, supra*. In prison-conditions cases, that state of mind is one of "'deliberate indifference'" to inmate health or safety, meaning that the prison official cannot be held liable under the Eighth Amendment unless the official knows of and disregards an excessive risk to inmate health or safety. *Farmer*, 511 U.S. at 834. The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he or she must also draw the inference. *Farmer, supra*.

[22] D.M. failed to allege that he was deprived of a single basic, human need, let alone some combination of deprivation. His allegation that placement in isolation qualifies as a deprivation serious enough to implicate the Eighth Amendment does not pass muster. He failed to state a claim as a matter of law. In addition, D.M.'s allegation that his sexual assault by Hansen qualified as cruel and unusual punishment does not implicate either Britton or Kenney. The standard by which a supervisor is held liable under § 1983 in his or her individual capacity for the actions of a subordinate is extremely rigorous. *D.M. v. State*, 23 Neb. App. 17, 867 N.W.2d 622 (2015), *overruled on other grounds, Davis v. State*, 297 Neb. 955, 902 N.W.2d 165 (2017). The plaintiff must establish that the supervisor personally participated in the unconstitutional conduct or was otherwise the moving force of the violation by authorizing, approving, or knowingly acquiescing in the unconstitutional conduct. *Id.* Kenney is not alleged to have participated in the sexual assault or to have otherwise authorized, approved, or knowingly acquiesced in the assault. Similarly, D.M. does not allege that Britton participated in,

directed, encouraged, knew about, or was in any way aware of the assault before it happened. D.M. failed to allege facts that rise to the legal threshold for an Eighth Amendment claim as to Britton and Kenney, and thus, they are entitled to qualified immunity on the Eighth Amendment cruel and unusual punishment claim.

## VI. CONCLUSION

For the reasons stated above, we conclude Britton and Kenney are entitled to qualified immunity as to the 8th and 14th Amendment claims, and we reverse in part the district court's order denying their motions to dismiss as to these claims. However, we find we lack jurisdiction to review the district court's denial of Britton's and Kenney's motions to dismiss D.M.'s First Amendment retaliation claim; and as to that part of the appeal, we dismiss for lack of jurisdiction.

REVERSED IN PART, AND IN PART DISMISSED.