Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
11/13/2020 08:08 AM CST

State of Nebraska, appellant and
cross-appellee, v. Jack E. Harris,
appellee and cross-appellant.

___ N.W.2d ___

Filed September 25, 2020.    Nos. S-19-130, S-19-133.

1.  **Jurisdiction.** A question of jurisdiction is a question of law.
2.  **Judgments: Appeal and Error.** Appellate courts independently review
    questions of law decided by a lower court.
3.  \_\_\_\_: \_\_\_\_. The construction of a mandate issued by an appellate court
    presents a question of law, on which an appellate court is obligated to
    reach a conclusion independent of the determination reached by the
    court below.
4.  **Jurisdiction: Appeal and Error.** Before reaching the legal issues
    presented for review, it is the duty of an appellate court to determine
    whether it has jurisdiction over the matter before it.
5.  **Jurisdiction: Final Orders: Appeal and Error.** For an appellate court
    to acquire jurisdiction of an appeal, there must be a final order or final
    judgment entered by the court from which the appeal is taken.
6.  **Final Orders: Appeal and Error.** Among the three types of final orders
    which may be reviewed on appeal is an order affecting a substantial
    right made during a special proceeding.
7.  **Actions: Words and Phrases.** An action involves prosecuting the
    alleged rights between the parties and ends in a final judgment, whereas
    a special proceeding does not.
8.  **Final Orders.** Whether an order affects a substantial right depends
    on whether it affects with finality the rights of the parties in the sub-
    ject matter.
9.  \_\_\_\_. Whether an order affects a substantial right depends on whether
    the right could otherwise effectively be vindicated.
10. **Final Orders: Appeal and Error.** An order affects a substantial right
    when the right would be significantly undermined or irrevocably lost by
    postponing appellate review.

11. **Appeal and Error: Words and Phrases.** In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order.

12. **Courts: Appeal and Error.** After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court.

13. **Courts: Judgments: Appeal and Error.** A lower court may not modify a judgment directed by an appellate court; nor may it engraft any provision on it or take any provision from it.

14. **Judgments: Appeal and Error.** No judgment or order different from, or in addition to, the appellate mandate can have any effect.

15. **Courts: Judgments: Jurisdiction: Appeal and Error.** Because a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court, any order attempting to do so is entered without jurisdiction and is void.

Appeals from the District Court for Douglas County: William B. Zastera and Jodi L. Nelson, Judges. Appeal in No. S-19-130 dismissed. Judgment in No. S-19-133 vacated, and cause remanded with directions.

Douglas J. Peterson, Attorney General, and James D. Smith, Solicitor General, for appellant.

Sarah P. Newell, of Nebraska Commission on Public Advocacy, for appellee.

Miller-Lerman, Cassel, Stacy, Funke, and Papik, JJ., and Moore and Welch, Judges.

Papik, J.

Two decades ago, following a jury trial, Jack E. Harris was convicted of first degree murder and use of a deadly weapon to commit a felony. His convictions were affirmed on direct appeal. As is often the case in such matters, years of litigation followed, in which Harris filed many motions collaterally attacking his convictions and sentences. After we remanded for further proceedings in an appeal involving such collateral attacks in 2017, the district court granted Harris' motion

for new trial and, later, his motion for absolute discharge on speedy trial grounds. On the State's appeal from these orders, we conclude that the district court did not comply with our mandate in an earlier appeal and that its order granting Harris a new trial and absolute discharge were thus void. Accordingly, we vacate those orders and remand the cause for further proceedings.

## I. BACKGROUND

### 1. Conviction, Earlier Proceedings, and Appeals by Harris

In 2000, following a jury trial, Harris was convicted of first degree murder and use of a deadly weapon to commit a felony. He was sentenced to life imprisonment on the murder conviction and 10 to 20 years' imprisonment on the weapons conviction, to be served consecutively. We affirmed on direct appeal. See *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002) (*Harris I*).

Several unsuccessful motions and appeals by Harris followed. See *State v. Harris*, 267 Neb. 771, 677 N.W.2d 147 (2004) (*Harris II*); *State v. Harris*, 274 Neb. 40, 735 N.W.2d 774 (2007) (*Harris III*); *State v. Harris*, 292 Neb. 186, 871 N.W.2d 762 (2015) (*Harris IV*); and *State v. Harris*, 296 Neb. 317, 893 N.W.2d 440 (2017) (*Harris V*).

In *Harris IV*, we reversed the district court order that dismissed Harris' second postconviction motion, which had been filed simultaneously with a new trial motion and a motion for writ of error coram nobis. Harris' motions rested on allegations (1) that Howard "Homicide" Hicks, Harris' accomplice and a key witness in Harris' trial, disclosed to fellow inmate Terrell McClinton that Hicks had lied during his testimony and that Hicks alone, not Harris, had killed the victim; (2) that another witness, Curtis Allgood, generally corroborated McClinton's account and provided details placing Hicks near the crime scene at the time of the murder; and (3) that Harris was unaware of this information until McClinton's contact with

Harris' attorney in 2006 and was prevented from discovering the information earlier because of misconduct by the prosecutor and the State's witness.

The district court had earlier granted Harris leave to file a third amended postconviction motion raising claims similar to the second motion's and additional claims concerning the State's plea agreement with Hicks. Although the court, the parties, and the evidence gave indications that the third amended postconviction motion was addressed at the subsequent June 28, 2013, hearing, Harris had not filed it. At the hearing, the district court announced that the matter was before the court on the third amended motion for postconviction relief and took judicial notice of the bill of exceptions for Harris' trial in 1999. The State did not assert that Harris had failed to file the third amended motion, but instead offered a copy of the motion and the court's docket entries showing that Harris had been given leave to file the motion. Harris presented evidence that was relevant only to his third amended motion for postconviction relief. Following the hearing, the district court's order expressly dismissed the *second* postconviction motion, and Harris appealed.

In *Harris IV*, we characterized the 2013 hearing as a hearing on the third amended postconviction motion. We held that "a court presented with a motion for postconviction relief which exists simultaneously with a motion seeking relief under another remedy must dismiss the postconviction motion without prejudice when the allegations, if true, would constitute grounds for relief under the other remedy sought." *Harris IV*, 292 Neb. at 191, 871 N.W.2d at 766. We determined that because the motion for new trial was time barred under the statute then in effect and because there was no possibility of obtaining relief through a writ of coram nobis, the district court erred in dismissing the motion for postconviction relief. See Neb. Rev. Stat. § 29-2103 (Reissue 2008). We remanded for consideration of "the postconviction motion" on the merits. *Harris IV*, 292 Neb. at 194, 871 N.W.2d at 768.

On remand, the district court did not conduct a new evidentiary hearing but considered the evidence presented at the 2013 evidentiary hearing. It denied postconviction relief, but given the matters addressed at the 2013 hearing, it was unclear whether the district court's order disposed of the second postconviction motion or the third amended postconviction motion involving similar and additional claims. The court's order, signed on March 3, 2016, referred to the "[s]econd" motion for postconviction relief and addressed claims raised only in the second motion. It stated that "[t]he matter came on for full evidentiary hearing on June 28, 2013." The court did not address Harris' claims regarding Hicks' plea agreement raised only in the third amended postconviction motion, but specifically ruled on his claims that the State suppressed information possessed by Allgood before Harris' trial and by McClinton before Harris' trial, direct appeal, or postconviction proceedings. Harris appealed, which led to our decision in *Harris V*.

In *Harris V*, we examined the record from the 2013 postconviction hearing and took judicial notice of our previous records and decisions in Harris' case. We determined that the district court properly denied relief on Harris' claim that the State suppressed evidence of McClinton's statements in his affidavit, but that it failed to apply the correct standard to Harris' claim that the State suppressed Allgood's statements at Harris' 1999 murder trial and failed to address Harris' claims from the third amended postconviction motion concerning the State's plea agreement with Hicks. We affirmed in part, and in part reversed and remanded for further proceedings to clarify which postconviction motion the court intended to rule on in the March 2016 order and, if necessary, to enter an order to dispense with all of Harris' claims for relief:

> The court's reasoning that no suppression occurred because the prosecutor did not know about Allgood's statements to investigators was incorrect. Under both federal and state law, the prosecutor had a duty to learn

of favorable material evidence known to others acting on the government's behalf in the case. Thus, the State's duty to disclose favorable material evidence existed even if the evidence was known only to police investigators and not to the prosecutor.

Further, the court's summary conclusion that Allgood's statements were not exculpatory did not comply with the applicable standards for evaluating Harris' claims. Favorable evidence includes both exculpatory and impeachment evidence.

Harris alleged in his motion that Allgood's statements would have corroborated his alibi defense and contradicted Hicks' testimony that he left the murder scene with Harris and drove around with him, disposing of evidence and distributing the money. Harris also alleged that he would have cross-examined Hicks about his contacts with [Corey] Bass[, an alleged drug dealer for whom McClinton said Hicks killed people]. His trial attorney stated that knowing whether Hicks "was with others or alone in terms of the story that he related" may have undermined Hicks' credibility and reinforced Harris' alibi.

The court did not consider whether Allgood's statements to the officer would have impeached Hicks' credibility. Nor did the court explain why it concluded that Allgood's statements were not "potentially exculpatory information."

As explained, we do not have the bill of exceptions from Harris' trial. Whether the State suppressed material exculpatory information by not disclosing Allgood's statements must be evaluated in the light of the trial evidence. The court's summary conclusion does not satisfy that requirement. Accordingly, we remand the cause for further clarification as to whether Allgood's statements were not exculpatory or would not have impeached Hicks' credibility.

. . . .

[W]e cannot determine from the record whether the district court intentionally or erroneously failed to rule on Harris' claims regarding Hicks' plea agreement. Though an argument can be made that the parties consented to try all of the claims set forth in Harris' third amended motion for postconviction relief, making such determination would be needlessly speculative. The better course is for this matter to be remanded to the district court for clarification as to which motion the court intended to rule on and, if necessary, the entry of an order which dispenses with all of Harris' claims for relief.

. . . .

We conclude that the court properly denied relief on Harris' claim that the State suppressed evidence of McClinton's statements in his affidavit. We conclude that the court applied the wrong standards in denying Harris relief on his claim that the State suppressed Allgood's statements to police by focusing only on the prosecutor's knowledge of Allgood's statements, by failing to consider whether Allgood's statements would have impeached Hicks' credibility, and by failing to examine whether Allgood's statements were material in the light of the trial evidence. Finally, the court erred in failing to accurately set forth which motion for postconviction relief it intended to address.

If the court concludes that the State suppressed material evidence regarding Allgood's statements to police or Hicks' plea agreement, it must evaluate the materiality of that suppression cumulatively. That is, the prejudicial effect of any new suppression must be considered cumulatively with the State's known suppression of [Officer Leland Cass' police] report.

*Harris V*, 296 Neb. at 342-46, 893 N.W.2d at 458-60. Following the release of our opinion, we issued our mandate ordering the district court to "proceed to enter judgment in conformity with the judgment and opinion of this court."

## 2. New Trial Order

On June 15, 2017, after our mandate in *Harris V* issued, Harris filed his third amended motion for postconviction relief, which he had previously been given leave to file, along with a motion for new trial based on newly discovered evidence. See Neb. Rev. Stat. § 29-2101(5) (Reissue 2016). In his motion for new trial, Harris alleged (1) that Hicks disclosed to McClinton that Hicks had lied during his testimony and that Hicks alone, not Harris, had killed the victim; (2) that Allgood corroborated McClinton's account of Hicks' statement; (3) that the prosecutor misrepresented or allowed Hicks to misrepresent Hicks' plea agreement during Harris' trial, documentation of which Harris' counsel obtained in 2010; and (4) that another witness at Harris' trial, Tony Bass, later told another inmate that he had lied during his testimony. Harris referenced supporting affidavits and other documentary evidence attached to the motion. He concluded by requesting a hearing to substantiate his claims by affidavit or testimony.

A hearing was held on Harris' motions on July 24, 2017, Judge William B. Zastera presiding. The parties presented arguments, but no evidence was offered or received.

On September 21, 2017, the district court entered an order granting Harris' motion for new trial and dismissing Harris' third amended motion for postconviction relief.

Relevant to the mandate in *Harris V*, the district court stated:

On March 3, 2016, this Court denied [Harris'] Amended Second Verified Motion for Postconviction Relief. [Harris] timely appealed and the Nebraska Supreme Court affirmed in part and reversed in part this Court's prior decision. . . .

At this juncture, [Harris] has filed a Third Amended Verified Motion for Postconviction Relief and a Motion for New Trial (Newly Discovered Evidence). In light of the Nebraska Supreme Court's findings in [*Harris V*], the Court now considers the current motions filed by [Harris].

Quoting language from *Harris IV*, the district court determined that it had to consider Harris' motion for new trial

before addressing the third amended motion for postconviction relief. The district court noted our finding in *Harris IV* that Harris' previous motion for new trial was barred by the then-applicable statute of limitations, but found that the current motion was not time barred by the current version of § 29-2103(4) (Reissue 2016). That section requires motions for new trial based on newly discovered evidence to be brought within 5 years of the verdict "unless the motion and supporting documents show the new evidence could not with reasonable diligence have been discovered and produced at trial and such evidence is so substantial that a different result may have occurred." § 29-2103(4). Accord § 29-2101(5).

The district court went on to observe that traditionally, new trial was not granted for issues of impeachment, but that where it appears the defendant has not been afforded a fair trial, it is the court's duty to grant new trial. See *State v. Robinson*, 198 Neb. 785, 255 N.W.2d 835 (1977). Moreover, it noted that in the context of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), impeachment evidence can be of such a weight that depriving the defendant of access to it can change the outcome of trial. The district court stated that it was unclear whether Harris would be procedurally barred from obtaining a new trial under § 29-2103, but that it believed Harris was entitled to a new trial because his constitutional rights had been implicated. The court continued:

> First, after reviewing the Bill of Exceptions, it is apparent to this Court that material evidence was suppressed at [Harris'] trial, whether done so intentionally or not. Regardless of intent, it is clear that the entirety of [an officer's] police report was not disclosed which contained the exculpatory statements of . . . Allgood. Further, it is possible, that Allgood's statements to the officer would have corroborated [Harris'] alibi defense and permitted him to impeach . . . Hicks' credibility at [Harris'] trial. Second, the Court finds that a new trial is also warranted because the evidence reflects that the prosecutor misrepresented

or allowed Hicks to misrepresent the nature of Hicks'
plea agreement during [Harris'] trial.

The district court determined the suppression of this evidence
to be material and prejudicial.

The district court dismissed Harris' third amended postcon-
viction motion without prejudice pursuant to *Harris IV* and
ordered him held without bail pending retrial.

Within 10 days, on September 29, 2017, the State filed a
motion "to reconsider, alter and/or amend" pursuant to Neb.
Rev. Stat. § 25-1329 (Reissue 2016). The State asserted that
the new trial order was made without receiving any evidence
or conducting an evidentiary hearing and that it was based on
incorrect legal standards. The State requested that the order be
amended or vacated.

As publicized and announced to the parties months before,
on October 1, 2017, Judge Zastera retired.

### 3. State Attempts to Appeal; Appeal Dismissed

On October 23, 2017, before any ruling on its motion
for reconsideration, the State filed a notice of appeal of the
September 21 order for new trial. On December 11, this court
issued an order to show cause within 10 days why the appeal
should not be dismissed for lack of jurisdiction. The State did
not respond and later acknowledged in a motion to extend
brief date that it could not show cause. Harris moved to dis-
miss the appeal for lack of jurisdiction, and on March 28,
2018, we did so. On April 20, our mandate was filed in the
district court.

### 4. Order Ruling Motion for Reconsideration Moot and Granting Discharge

On May 1, 2018, Chief Justice Michael G. Heavican
appointed Judge Nathan B. Cox to preside over this matter,
replacing Judge Zastera.

On May 10, 2018, Harris moved for absolute discharge on speedy trial grounds pursuant to Neb. Rev. Stat. § 29-1207 (Reissue 2016). He also moved to dismiss the State's motion for reconsideration as inapplicable to criminal cases and untimely filed.

On June 28, 2018, Judge Cox recused himself upon Harris' motion. On July 10, Chief Justice Heavican appointed Judge Jodi L. Nelson to preside, and the order was filed in the district court on July 16.

Judge Nelson subsequently conducted a hearing on the pending motions. The following exchange occurred between counsel for the State and Judge Nelson:

> [State's counsel]: Judge, I was wondering if we could take up the — uh — motion for discharge first. Because I think some of the documents that will pertain to the motion to reconsider — uh — I plan to offer during that, as well.
>
> If the Court — I guess — technically thought that there was merit to the motion for discharge, then I guess my motion to reconsider probably is moot. Uh, but that was just kind of my thought. I don't know if —
>
> THE COURT: Well, we're going to hear them all today.
>
> [State's counsel]: Sure.
>
> THE COURT: (Laughs.) So, how I decide them may be another story; but I — I think we're going to take them up all today so that we can get what is pending — uh — taken care of. I don't particularly care what order you want to do that in.

The parties proceeded to address the motion for absolute discharge first, then the motion for reconsideration.

On February 4, 2019, Judge Nelson entered an order granting Harris' motion for absolute discharge and ruling moot the State's motion for reconsideration and Harris' motion to dismiss it. Judge Nelson determined that the State was permitted to file a motion for reconsideration, but did not consider the merits of the motion and concluded that the State had failed

to show that any of the days between the September 21, 2017, order and Harris' motion for discharge on May 10, 2018, were excludable for speedy trial purposes.

## 5. Present Appeals

On February 8, 2019, the State filed a notice of appeal from the district court order entered September 21, 2017, that granted Harris' motion for new trial and from the order entered February 4, "2018," that sustained Harris' motion for absolute discharge and found the State's motion for reconsideration moot. We docketed this appeal as case No. S-19-133.

On the same date, the State filed an application for leave to docket exception proceedings pursuant to Neb. Rev. Stat. § 29-2315.01 (Cum. Supp. 2018), which we granted.

On February 12, 2019, the district court granted the State's motion to stay the February 4 discharge order pending appeal, "provided the State files any appeal today."

Within 30 days of this court's approval, on February 21, 2019, the State filed a notice of appeal in the district court pursuant to § 29-2315.01 from the district court's orders entered February 4, 2019, and September 21, 2017. We docketed this appeal as case No. S-19-130.

On March 11, 2019, Harris moved to dismiss both appeals, which we have consolidated, for lack of jurisdiction. We overruled Harris' motions to dismiss and reserved jurisdictional issues until plenary submission of appeals.

The State has addressed both appeals in the same brief, with a single list of assigned errors.

Harris has cross-appealed.

## II. ASSIGNMENTS OF ERROR

The State assigns that the district court erred in (1) sustaining Harris' motion for new trial and not sustaining the State's motion for reconsideration, (2) sustaining Harris' motion for speedy trial discharge, and (3) sustaining Harris' objection to the prosecutor's affidavit at the speedy trial discharge hearing.

On cross-appeal, Harris assigns that the district court erred in (1) finding that Judge Zastera's order granting Harris' motion for new trial was a final, appealable order and (2) determining that the State could move for reconsideration of that order and finding that Harris' motion to dismiss the State's motion for reconsideration was moot.

## III. STANDARD OF REVIEW

[1,2] A question of jurisdiction is a question of law. *State v. Uhing*, 301 Neb. 768, 919 N.W.2d 909 (2018). Appellate courts independently review questions of law decided by a lower court. *Id.*

[3] The construction of a mandate issued by an appellate court presents a question of law, on which an appellate court is obligated to reach a conclusion independent of the determination reached by the court below. *State v. Henk*, 299 Neb. 586, 909 N.W.2d 634 (2018).

## IV. ANALYSIS

[4] As noted above, the validity of the State's appeals is in question, a matter we now must decide. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *State v. Fredrickson*, 305 Neb. 165, 939 N.W.2d 385 (2020). This case comes to us under unusual circumstances. The State attempts to challenge the new trial order and the discharge order by filing not one but two notices of appeal, invoking two different mechanisms for review: first, a conventional direct appeal pursuant to Neb. Rev. Stat. § 25-1912 (Cum. Supp. 2018), which we docketed as case No. S-19-133, and, later, exception proceedings pursuant to § 29-2315.01, docketed as case No. S-19-130.

For reasons we will now explain, we conclude that the direct appeal conferred jurisdiction on this court as to both the new trial order and the discharge order, and we consider both orders on the merits in case No. S-19-133. Consequently, we

dismiss as moot the exception proceedings, docketed as case No. S-19-130.

## 1. Case No. S-19-133: Direct Appeal

### (a) New Trial Order

#### (i) State's Right to Direct Appeal

The first question that confronts us in this case is whether the State can appeal when a trial court grants a defendant's motion for new trial after the time for direct appeal of a criminal conviction has expired. The statutory scheme governing motions for new trial in criminal cases does not speak to the matter, see Neb. Rev. Stat. § 29-2101 et seq. (Reissue 2016), and neither party has directed us to any cases in which we have addressed this specific issue. We are thus faced with an issue of first impression.

Harris contends that we need not spend much time on this issue, because the State is precluded from appealing by a well-established principle: that absent specific statutory authorization, the State generally has no right to appeal an adverse ruling in a criminal case. See *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018). This principle bars the State's appeal, Harris asserts, because the district court granted him a new criminal trial and the State can point to no specific statute authorizing an appeal. As we will explain, however, although the district court purported to grant Harris a new criminal trial, it does not follow that the new trial order itself was issued in a criminal case.

In a number of contexts, we have held that the State may mount a direct appeal to challenge adverse rulings when an individual convicted and sentenced for a crime collaterally attacks his or her conviction and sentence. We have held that the State may appeal in habeas corpus proceedings, postconviction proceedings, and cases arising under the DNA Testing Act. See, e.g., *State v. Thieszen*, 295 Neb. 293, 887 N.W.2d 871 (2016) (postconviction); *Meyer v. Frakes*, 294 Neb. 668, 884 N.W.2d 131 (2016) (habeas corpus); *State v. Pratt*, 273 Neb.

817, 733 N.W.2d 868 (2007) (DNA Testing Act). See, also, *State v. Jerke*, 302 Neb. 372, 923 N.W.2d 78 (2019) (reviewing State's appeal from district court order granting defendant's motion to vacate sentence and withdraw plea).

The foregoing proceedings are civil in nature. From the earliest days of our state Constitution, habeas corpus proceedings have been designated as civil, see *Morrill v. Taylor*, 6 Neb. 236 (1877), and that has remained unchanged, see, e.g., *Sanders v. Frakes*, 295 Neb. 374, 888 N.W.2d 514 (2016). Similarly, postconviction proceedings are termed civil by statute and may be appealed as provided for appeals in civil cases. See Neb. Rev. Stat. §§ 29-3001(2) and 29-3002 (Reissue 2016). See, also, *State v. Stewart*, 242 Neb. 712, 496 N.W.2d 524 (1993) (citing U.S. Supreme Court opinion for proposition that postconviction proceedings are civil). By analogy, we have determined proceedings under the DNA Testing Act are also civil in nature because, like postconviction proceedings, they too are a collateral attack on a conviction, not part of the criminal proceeding itself. See, *State v. Pratt, supra*; *State v. Poe*, 271 Neb. 858, 717 N.W.2d 463 (2006). Recognizing the civil nature of proceedings under the DNA Testing Act and the absence of any restrictions on the State's right to appeal under that act, we have held that the State may appeal from an adverse ruling in such a proceeding. See *State v. Pratt*, 287 Neb. 455, 842 N.W.2d 800 (2014). As we will explain, the same reasoning leads us to conclude that the order that granted Harris' motion for new trial based on newly discovered evidence was appealable by the State pursuant to § 25-1912.

Like habeas corpus proceedings, postconviction proceedings, and proceedings under the DNA Testing Act, Harris' motion for new trial based on newly discovered evidence was a collateral attack on a final criminal judgment and not part of the criminal proceeding itself. When a judgment is attacked in a way other than by proceeding in the original action to have it vacated, reversed, or modified, or by a proceeding in equity to

prevent its enforcement, the attack is a collateral attack. *State v. Barnes*, 303 Neb. 167, 927 N.W.2d 64 (2019). The framework under which Harris brought his motion for new trial fits this description.

Harris sought a new trial pursuant to § 29-2101(5), under which relief may be granted based on "newly discovered evidence material for the defendant which he or she could not with reasonable diligence have discovered and produced at the trial" and which materially affects the defendant's substantial rights. A motion for new trial alleging newly discovered evidence must be filed "within a reasonable time after the discovery of the new evidence" and "cannot be filed more than five years after the date of the verdict, unless the motion and supporting documents show the new evidence could not with reasonable diligence have been discovered and produced at trial and such evidence is so substantial that a different result may have occurred." § 29-2103(4). In response to a motion for new trial under § 29-2101(5) and following a hearing, a court may "vacate and set aside the judgment and release the person from custody or grant a new trial as appropriate." § 29-2102(3).

Under § 29-2101(5), as in other collateral attacks, Harris sought to have the existing judgment vacated. Harris' motion did not occur in the original criminal proceeding: Harris could and did move for new trial after the time for direct appeal had expired. Thus, like habeas corpus proceedings, postconviction proceedings, and proceedings under the DNA Testing Act, Harris' motion for new trial based on newly discovered evidence was a collateral attack on a conviction, not part of the criminal proceeding itself, and therefore civil in nature. And like the law concerning other collateral attacks, no provision in the statutes governing new criminal trials restricts the State's right to appeal. Accordingly, we conclude that the State has a right to file a direct appeal from an order granting a new trial in a criminal case based on newly discovered evidence after the time for direct appeal has expired.

Harris asserts that motions for new trial based on newly discovered evidence under § 29-2101(5), even when filed after the time to challenge the conviction and sentence on direct appeal has passed, are more similar to other motions for new trial than they are to proceedings under the DNA Testing Act. He cites *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003), in which we noted the similarities between motions for new trial based on newly discovered evidence under § 29-2101(5) and those based on newly discovered DNA evidence under § 29-2101(6). In *Bronson*, we held that these motions were separate and distinct from the proceedings under Neb. Rev. Stat. § 29-4123(2) (Reissue 2016) of the DNA Testing Act such that an appeal arising from a motion to vacate and set aside a judgment under § 29-4123(2) does not deprive a trial court of jurisdiction to consider a motion for new trial filed under § 29-2101(6). However, we do not believe this holding makes motions for new trial based on newly discovered evidence any less collateral in nature.

Harris also disputes that motions for new trial based on newly discovered evidence are civil in nature. He points out that the Legislature has adopted separate statutes governing motions for new trial in civil and criminal contexts and that the new trial statutes in chapter 29 of the Nebraska Revised Statutes are written in terms reflecting its criminal law application. See, Neb. Rev. Stat. § 25-1144 et seq. (Reissue 2016); § 29-2101 et seq. But the same could be said about postconviction proceedings and proceedings under the DNA Testing Act, and in the case of postconviction proceedings, we have stated that they are "not . . . ordinary civil action[s]." See *State v. Robertson*, 294 Neb. 29, 41, 881 N.W.2d 864, 875 (2016). Harris posits that this statement calls into question the ongoing validity of our previous determinations that proceedings under the DNA Testing Act are civil in nature. However, we disagree. Our holding in *Robertson* that civil pleading rules did not apply to postconviction proceedings did not make postconviction

proceedings or proceedings under the DNA Testing Act any less civil in nature.

Harris argues that even if his motion for new trial was a civil proceeding, once it was granted, the matter reverted to a criminal proceeding, from which the State could not file a direct appeal. To illustrate, he points out that a defendant has no right to counsel during a collateral attack, see *State v. Pratt*, 273 Neb. 817, 733 N.W.2d 868 (2007), but does have a right to counsel in any new trial resulting therefrom. We agree that under such circumstances, any new trial *following* a collateral attack is criminal in nature, but the same is not true of the order granting the new trial. Indeed, in appeals involving collateral attacks, we have treated the resulting order as civil in nature. See, e.g., *id*.

Harris also relies on *State v. Taylor*, 179 Neb. 42, 136 N.W.2d 179 (1965), for the proposition that there is no authority for an appellate court to reinstate a guilty verdict upon a State's appeal from a new trial order and argues that therefore, the rights attending criminal matters should reattach. But as we explain in more detail in the next section, Harris misconstrues *Taylor*, an exception proceedings case in which we spoke of the necessity of rendering an advisory opinion, not the practicalities of reinstating a conviction such as would arise in this case.

Finally, Harris argues that this is not actually a case of first impression and that our precedent forecloses any possibility of review of his motion for new trial. Again, he points to *State v. Taylor, supra*, and the cases that followed it, *State v. Martinez*, 198 Neb. 347, 252 N.W.2d 630 (1977), and *State v. Linn*, 192 Neb. 798, 224 N.W.2d 539 (1974). In those cases, we did not allow the State to appeal from an order granting new trial in a criminal case. However, unlike the instant case, none of the three cases upon which Harris relies involved a judgment, because the appeals in those cases were filed in the original criminal proceedings before the defendants were sentenced. See *State v. Jackson*, 291 Neb. 908, 870 N.W.2d 133 (2015) (final judgment in criminal case means sentence).

In *Taylor*, the district court sustained the defendant's motion for new trial following an adverse verdict; but significantly, *Taylor* does not reflect that the defendant was sentenced before this ruling. The State sought review under § 29-2315.01 (Reissue 1964), and we dismissed the State's appeal. In doing so, we discussed the necessity of a final order and characterized the order in *Taylor* as interlocutory because further action was required: "It is apparent that an order setting aside a verdict and requiring a retrial does not dispose of the cause." 179 Neb. at 46, 136 N.W.2d at 182. In *Linn*, we applied the same rationale in dismissing the State's exception proceedings challenging a new trial order that followed a defendant's conviction, again with no mention of any sentence. And again, in *Martinez*, the defendant had not been sentenced for the conviction for which he was granted a new trial, and under *Taylor*, we dismissed the State's cross-appeal in the matter for lack of a final order. Because *Taylor*, *Linn*, and *Martinez* did not involve a collateral attack on a final criminal judgment, they do not govern the State's right to appeal the order in this case.

In sum, the State has the right to appeal an order granting a motion for new trial based on newly discovered evidence that has been filed after the time for direct appeal has expired. Yet our analysis of the validity of the State's appeal of the new trial order is not at an end. We must next consider whether the State appeals from a final, appealable order.

### (ii) Final, Appealable Order

[5,6] For an appellate court to acquire jurisdiction of an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken. *State v. Paulsen*, 304 Neb. 21, 932 N.W.2d 849 (2019). Among the three types of final orders which may be reviewed on appeal is an order affecting a substantial right made during a special proceeding. See Neb. Rev. Stat. § 25-1902 (Reissue 2016). For the reasons below, we conclude that the order granting Harris' motion for new trial based on newly discovered evidence was this type of final order.

[7] First, the order granting Harris' motion for new trial based on newly discovered evidence was made in a special proceeding. Special proceedings entail civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes and have also been described as every special statutory remedy which is not in itself an action. See *State v. Pratt*, 287 Neb. 455, 842 N.W.2d 800 (2014). An action involves prosecuting the alleged rights between the parties and ends in a final judgment, whereas a special proceeding does not. *State v. Loyd*, 269 Neb. 762, 696 N.W.2d 860 (2005). Where the law confers a right, and authorizes a special application to a court to enforce it, the proceeding is special, within the ordinary meaning of the term "special proceeding." *Id.* A special proceeding is not an integral part of or a step in the action; it is not part of what is sometimes referred to as the "main case." See *State v. Vela*, 272 Neb. 287, 721 N.W.2d 631 (2006).

Under these principles, Harris' motion for new trial initiated a special proceeding. As we have explained in the section above, Harris' motion was civil in nature, not part of the criminal proceeding itself. That is, having been filed long after judgment, it was not part of the main case. And it bore other hallmarks of a special proceeding. Section 29-2101(5) confers a right to a new trial upon the discovery of new evidence that fits certain criteria and also authorizes a special application to a court to enforce the right. Harris' motion requested a new trial and alleged facts to support the claim that a new trial was warranted. He did not seek a final judgment.

Harris argues that a motion for new trial does not fit the description of a special proceeding, because it is in itself an action. He refers to cases in which we have determined that the district court may exercise jurisdiction over motions for new trial based on § 29-2101(5) and (6) at the same time as this court exercises jurisdiction over a direct appeal or an appeal under the DNA Testing Act. See, *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003); *Smith v. State*, 167 Neb. 492, 93 N.W.2d 499 (1958). However, we do not understand

how the separate and independent nature of these types of proceedings could alter the character of a motion for new trial based on newly discovered evidence.

[8-10] Second, the order that granted Harris' motion for new trial based on newly discovered evidence affected a substantial right of the State. Whether an order affects a substantial right for purposes of appeal depends on a number of factors. See *State v. Fredrickson*, 305 Neb. 165, 939 N.W.2d 385 (2020). The inquiry focuses on whether the right at issue is substantial and whether the court's order has a substantial impact on that right. *Id.* Regarding the importance of the right affected, we often state that a substantial right is an essential legal right, not merely a technical right. See *State v. Paulsen*, 304 Neb. 21, 932 N.W.2d 849 (2019). Whether an order affects a substantial right depends on whether it affects with finality the rights of the parties in the subject matter. *State v. Fredrickson, supra.* It also depends on whether the right could otherwise effectively be vindicated. *Id.* An order affects a substantial right when the right would be significantly undermined or irrevocably lost by postponing appellate review. *Id.*

We conclude that because the State had already obtained a criminal judgment, the order that granted Harris' motion for new trial based on newly discovered evidence affected a substantial right of the State. Both this court and the U.S. Supreme Court have recognized the State's interest in the finality of criminal judgments of conviction. See, e.g., *Ramos v. Louisiana*, ___ U.S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); *United States v. Frady*, 456 U.S. 152, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982); *State v. Louthan*, 257 Neb. 174, 595 N.W.2d 917 (1999); *State v. Lee*, 251 Neb. 661, 558 N.W.2d 571 (1997). This finality interest is premised in part on the significant expenditure of the State's time and resources required to secure a criminal conviction. "'"Society's resources have been concentrated at [the time of trial] in order to decide, within the limits of human fallibility, the question of guilt or innocence of one of its citizens."'" *State v. Lotter*, 278 Neb. 466, 481, 771 N.W.2d 551, 563 (2009), quoting *Herrera v.*

*Collins*, 506 U.S. 390, 113 S. Ct. 853, 122 L. Ed. 2d 203 (1993). It also rests on the fact that "with the passage of time and the erosion of memory and the dispersion of witnesses, there is no guarantee that the truth-seeking function of a new trial would be any more exact than the first trial." *Id.* at 481, 771 N.W.2d at 563. And courts have observed that without finality, the criminal law is deprived of much of its deterrent effect. See, e.g., *McCleskey v. Zant*, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991) (superseded by statute on other grounds as stated in *Banister v. Davis*, ___ U.S. ___, 140 S. Ct. 1698, 207 L. Ed. 2d 58 (2020)).

We further determine that the order granting Harris' motion for new trial had a substantial impact on the State's right. An order granting new trial following a conviction significantly undermines the State's interest in finality. The State cannot recoup the costs occasioned by a new trial, and if the defendant is ultimately acquitted, the State cannot lodge a direct appeal to seek reinstatement of the conviction. See *State v. Thalken*, 299 Neb. 857, 911 N.W.2d 562 (2018) (generally, State has no right to appeal adverse ruling in criminal case).

At oral argument, Harris asserted that criminal new trial statutes do not expressly address the State's substantial rights, only the defendant's. See § 29-2101(5). While this is true, it does not negate the State's substantial right as we have described it. Furthermore, our finding that the State has a substantial right in the finality of a criminal conviction, and therefore the ability to appeal following the grant of a new trial based on newly discovered evidence, does not impinge on a defendant's right to seek a new trial; it only allows for the possibility of appellate review to ensure a grant of a new trial is properly ordered.

Harris claims we have previously held that an order granting a motion for new trial in a criminal case is not a final, appealable order. He relies on three cases mentioned above: *State v. Taylor*, 179 Neb. 42, 136 N.W.2d 179 (1965); *State v. Linn*, 192 Neb. 798, 224 N.W.2d 539 (1974); and *State v. Martinez*, 198 Neb. 347, 252 N.W.2d 630 (1977). In each of

those cases, we rejected the State's appellate challenge of an order granting a motion for new trial, stating in each case that the order appealed from was not final and appealable. But as we describe in more detail in the previous section, *Taylor*, *Linn*, and *Martinez* are distinguishable from this case, partly because, unlike Harris' motion for new trial, the motions for new trial in those cases were not collateral attacks on a final criminal judgment.

*Taylor* and *Linn* are further distinguishable from this case because they were decided under exception proceedings. In part, *Taylor* based its decision, which *Linn* followed, on reasoning that were it to find the new trial order in error, the district court could be bound by that decision. This would run contrary to the legislative mandate that our holdings in exception proceedings are advisory when the defendant has already been placed in jeopardy in the trial court. See Neb. Rev. Stat. § 29-2316 (Reissue 2016). This is not a concern in the instant case, because we have concluded that the State may challenge the new trial order in its direct appeal, a review process that cannot result in an advisory opinion. See *State v. Molina*, 271 Neb. 488, 713 N.W.2d 412 (2006) (stating that in direct appeal, it is not function of appellate court to render advisory opinions).

Having determined that the new trial order is a final, appealable order, we proceed to consider the remaining requirements of appellate jurisdiction.

### (iii) Timely Perfection of Direct Appeal

As we have explained, the State appeals from a final, appealable order, but there is one more hurdle to clear before we can reach the merits of the State's challenge to the new trial order. We next must assess whether the State's direct appeal from the new trial order was timely perfected. We conclude that it was.

As an initial matter, we take up Harris' position that the State did not fulfill two of the basic requirements to perfect an appeal in case No. S-19-133: a notice of appeal and a

docket fee. First, Harris points out that the notice of appeal identifies the orders appealed from as having been filed on September 21, 2017, and February 4, "2018." The new trial order was in fact entered on September 21, 2017, but the discharge order was entered on February 4, 2019. However, this error is not fatal to the State's appeal. Section 25-1912, which governs the filing of an appeal, does not require that the order appealed from be correctly identified to confer appellate jurisdiction. See *Dominguez v. Eppley Transp. Servs.*, 277 Neb. 531, 763 N.W.2d 696 (2009). Second, Harris claims that the record does not contain any indication that the docket fee for case No. S-19-133 has been paid as required to perfect an appeal. See, § 25-1912(1); Neb. Ct. R. App. P. § 2-101(A) (rev. 2015). But upon an examination of our records, we are satisfied that the docket fee has been timely deposited.

With an adequate notice of appeal having been filed and the docket fee deposited, we need only examine whether the State's notice of appeal was timely filed. See *id.* Generally, appeals must be filed within 30 days after the entry of the judgment, decree, or final order. § 25-1912(1). However, that period may be terminated by filing a motion to alter or amend within 10 days of the judgment. §§ 25-1329 and 25-1912(3). See, also, *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009). A new period of 30 days for filing a notice of appeal commences when the terminating motion is ordered dismissed. *Id.* Here, the State filed a valid terminating motion in the form of a "Motion for Reconsideration."

Typically, a motion for reconsideration does not terminate the time for appeal and is considered nothing more than an invitation to the court to consider exercising its inherent power to vacate or modify its own judgment. See *State v. Lotter*, 301 Neb. 125, 917 N.W.2d 850 (2018), citing *Kinsey v. Colfer, Lyons*, 258 Neb. 832, 606 N.W.2d 78 (2000). For this reason, we have held that once a notice of appeal is filed, any pending motions to reconsider that have not been ruled upon become moot. See *Kinsey v. Colfer, Lyons, supra*. Harris asserts that is what happened to the State's motion for reconsideration

when the State filed its initial unsuccessful appeal, which we dismissed for lack of jurisdiction. But Harris is mistaken, as we will explain.

In some contexts, a motion for reconsideration may also be treated as a motion to alter or amend a judgment for purposes of terminating the appeal period. *State v. Lotter, supra.* To be treated as a motion to alter or amend a judgment, a motion for reconsideration must be filed no later than 10 days after the entry of judgment and seek substantive alteration of the judgment. See *id*. See, also, *State v. Gibilisco*, 279 Neb. 308, 778 N.W.2d 106 (2010).

The State's motion for reconsideration meets the criteria to be treated as a terminating motion. It was filed on September 29, 2017, less than 10 days after the new trial order was entered on September 21. The motion for reconsideration sought substantive alteration of the new trial order by asking that the court alter, amend, or vacate it because it was "based on precepts and legal standards reserved for Motions for Post-Conviction Relief and not on the requisite standards and precepts required to be considered, analyzed and addressed in an order granting or denying a Motion for New Trial."

The State's motion for reconsideration remained pending, even when the State filed its first appeal to this court, which we dismissed for lack of jurisdiction. Under § 25-1912(3), a notice of appeal filed before a pending terminating motion has been dismissed shall have no effect. But the terminating motion continues to operate until it is dismissed, even if the proponent attempts to appeal in the meantime. See § 25-1912(3).

With the motion for reconsideration operating as a terminating motion pursuant to § 25-1912, the State's 30-day appeal period commenced when the district court dismissed the motion for reconsideration as moot on February 4, 2019. The State filed its notice of appeal in case No. S-19-133 on February 8. Therefore, the State's direct appeal was timely.

Harris challenges the validity of the State's motion for reconsideration as a terminating motion on two bases. First, he argues that such a terminating motion is reserved for civil

cases and thus could not serve as a terminating motion in this matter. Second, Harris claims that by not obtaining an earlier ruling, the State waived or abandoned the motion or filed it in bad faith. We reject both of these arguments.

In support of his first point, Harris mainly asserts that because the statutes relating to terminating motions are located in the chapter addressing civil procedure, they cannot apply to the new trial order arising from a motion filed under § 29-2101(5), which is located in the chapter addressing criminal procedure. Like Harris' previous arguments that the motion for new trial based on newly discovered evidence is not civil in nature, this argument also fails, and for the same reasons. As we have explained, such motions are civil in nature, similar to habeas corpus proceedings, postconviction proceedings, and proceedings under the DNA Testing Act. And we have previously allowed motions to alter or amend under § 25-1329 in postconviction proceedings, including when filed by the State. See, *State v. Gibilisco*, 279 Neb. 308, 778 N.W.2d 106 (2010) (State's motion for reconsideration treated as motion to alter or amend); *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009) (defendant filed motion to alter or amend); *State v. Bao*, 269 Neb. 127, 690 N.W.2d 618 (2005) (defendant's motion to alter or amend treated as terminating motion). While our postconviction statutes do specifically provide that appeals may be taken from the district court as provided for appeals in civil cases, see § 29-3002, that provision did not dissuade us from allowing a civil appeal path in cases involving proceedings under the DNA Testing Act, even though that statutory scheme contains no comparable provision and is located in chapter 29 of the Nebraska Revised Statutes. See, *State v. Pratt*, 287 Neb. 455, 842 N.W.2d 800 (2014); Neb. Rev. Stat. § 29-4116 et seq. (Reissue 2016). Today, we reach the same conclusion regarding an order granting a motion for new trial based on newly discovered evidence that has been filed after the time for direct appeal has expired. It logically follows that the appeal process in this case would allow for terminating motions.

We discern no provision of law that would preclude the State from filing a motion for reconsideration that operates as a terminating motion in this case. Indeed, we have recognized that "[j]udicial efficiency is served when any court . . . is given the opportunity to reconsider its own rulings, either to supplement its reasoning or correct its own mistakes." See *State v. Hausmann*, 277 Neb. 819, 827, 765 N.W.2d 219, 225 (2009), *overruled on other grounds, McEwen v. Nebraska State Coll. Sys.*, 303 Neb. 552, 931 N.W.2d 120 (2019) (statute governing motions to alter or amend judgment applies to judgment of district court acting as intermediate appellate court).

We are also unpersuaded by the arguments Harris makes in support of his position that the motion to reconsider was waived, was abandoned, or was pursued in bad faith. Harris argues that the State waived the right to rely on the motion for reconsideration as a terminating motion by not setting the matter for hearing and securing a ruling before its initial unsuccessful attempt to appeal. For support, Harris relies on *State v. Aldaco*, 271 Neb. 160, 710 N.W.2d 101 (2006). In *Aldaco*, the defendant filed a pro se notice of appeal after his motion for speedy trial discharge was orally overruled and the matter proceeded to trial. The appeal was dismissed for lack of jurisdiction because no file-stamped order had been entered by the trial court. The defendant did not seek further review. The trial court subsequently entered a written order, which the defendant appealed within 30 days. We concluded that regardless of whether the first appeal should have been dismissed, the 30-day period to appeal began to run after the trial court orally overruled the motion and proceeded to trial, and that the second notice of appeal was filed out of time. We do not understand how the holding in *Aldaco* warrants a waiver of the motion for reconsideration in this case. *Aldaco* did not deal with a terminating motion, and our jurisprudence concerning terminating motions does not address waiver.

Harris also asserts that the motion for reconsideration should have no effect because the State abandoned it by failing to

pursue it once it was filed. Harris relies on the proposition that a motion which is never called to the attention of the court is presumed to have been waived or abandoned by the moving party and that where no ruling appears to have been made on a motion, the presumption is, unless it otherwise appears, that the motion was waived or abandoned. See, *ACI Worldwide Corp. v. Baldwin Hackett & Meeks*, 296 Neb. 818, 896 N.W.2d 156 (2017); *Hiway 20 Terminal, Inc. v. Tri-County Agri-Supply, Inc.*, 235 Neb. 207, 454 N.W.2d 671 (1990).

Harris seems to characterize observations made by Judge Nelson that the State failed to obtain a hearing date in compliance with local rules as a finding that the State abandoned the motion for reconsideration. We do not read the discharge order that way, and we do not believe the State abandoned its motion for reconsideration. Failure to set a hearing date in accordance with a local rule does not invalidate a terminating motion; the statutes governing terminating motions do not require it. See *Lombardo v. Sedlacek*, 299 Neb. 400, 908 N.W.2d 630 (2018). Further, the State *did* bring the motion for reconsideration to the district court's attention. The district court held a hearing on the motion before ultimately dismissing it as moot. This is not a case where the motion was never brought to the attention of the court.

Similarly, we are not convinced by Harris' argument that the State's motion for reconsideration should not operate as a terminating motion due to the State's "dubious actions" or bad faith. See brief for appellee on cross-appeal at 83. Harris cites *State v. Bao*, 269 Neb. 127, 690 N.W.2d 618 (2005), where we treated the defendant's motion for reconsideration as a terminating motion, even though the defendant had withdrawn it. Citing to a similar federal case, we concluded that a new 30-day appeal period began after the withdrawal because there was no indication that the terminating motion was filed and withdrawn in bad faith. In the present case, the State never withdrew its terminating motion, and we do not discern bad faith on the part of the State.

In short, none of the arguments raised by Harris on this subject have merit. The State's direct appeal in case No. S-19-133 was timely perfected and has met the other requirements for our appellate jurisdiction to review the new trial order.

### (iv) Merits: New Trial Order's Noncompliance With This Court's Mandate

As we have established, we have appellate jurisdiction to review the new trial order. Even so, Harris makes one last argument that we should not consider the State's arguments regarding it. According to Harris, comments by the State's counsel at the hearing on the State's motion for reconsideration and Harris' motion to discharge waived as invited error any opposition to the district court's ruling that the motion for reconsideration was denied as moot.

At the hearing, counsel for the State, during a discussion about which order should be addressed first, remarked, "If the Court — I guess — technically thought that there was merit to the motion for discharge, then I guess my motion to reconsider probably is moot. Uh, but that was just kind of my thought. I don't know if — [.]" It is true that a party cannot complain of error which he or she has invited the court to commit. *State v. Dixon*, 286 Neb. 157, 835 N.W.2d 643 (2013). But we do not consider a party's equivocal suggestion of the possibility of an adverse ruling, during a discussion about the order in which matters would be addressed at the hearing, to be the equivalent of inviting error.

Turning now to the State's arguments regarding the new trial order, the State contends that the new trial order was erroneous because the district court did not receive any evidence to support it, because the court applied the wrong standard in granting it, and because the motion for new trial is meritless. The State's arguments may be correct, but we need not and, in fact, cannot decide them because of a more fundamental problem with the district court's new trial order identified by the State: In granting Harris' motion for new trial, the district court did not comply with our mandate in *Harris V*.

[11-13] In appellate procedure, a "remand" is an appellate court's order returning a proceeding to the court from which the appeal originated for further action in accordance with the remanding order. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). After receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. *Id.* When a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate. See *id*. To carry out its unqualified duty to follow the mandate issued by an appellate court, a lower court may not modify a judgment directed by an appellate court; nor may it engraft any provision on it or take any provision from it. *State v. Payne*, 298 Neb. 373, 904 N.W.2d 275 (2017).

Guided by these principles, we turn now to the question of whether the district court's new trial order was in accordance with the specific mandate of *Harris V*. Where the mandate incorporates the appellate court's opinion by reference, we examine the opinion in conjunction with the mandate to determine how the lower court should have proceeded. See *State v. Payne, supra*. In *Harris V*, our mandate ordered the district court to "proceed to enter judgment in conformity with the judgment and opinion of this court." Our opinion in *Harris V* instructed the district court, upon remand, to clarify whether it had addressed Harris' second postconviction motion or third amended postconviction motion and to apply the correct standard to Harris' claims concerning the suppression of Allgood's statements, an issue raised in both motions. Finally, we directed the district court to rule, if necessary, on Harris' claims raised in the third amended motion for postconviction relief regarding Hicks' plea agreement.

On remand, the district court clarified that its previous order pertained to the second postconviction motion, but its compliance with our mandate stopped there. After identifying the second postconviction motion as the subject of its previous order, the district court did not address the suppression of

Allgood's statements in the context of that motion, as clearly directed by *Harris V*. Instead, it took up that analysis in the context of Harris' later-filed motion for new trial. Because it disposed of the matter based on the motion for new trial, the district court dismissed the third amended postconviction motion without prejudice. This was not in compliance with our mandate.

Harris argues that the new trial order was not beyond the scope of our mandate in *Harris V*. He bases this argument on the premise that the motion for new trial was completely separate and independent from any postconviction proceedings. Harris primarily relies on *Smith v. State*, 167 Neb. 492, 93 N.W.2d 499 (1958), where we held that the trial court should consider a motion for new trial based on newly discovered evidence at the same time as direct appellate review of the criminal conviction. We determined that the two proceedings "should be conducted separately and independently of each other" and that neither the Legislature nor our case law regarded this situation as an invasion of the appellate court's jurisdiction. *Id.* at 494, 93 N.W.2d at 500. See, also, *State v. Bronson*, 267 Neb. 103, 672 N.W.2d 244 (2003) (based on *Smith*, lower court had jurisdiction to consider motion for new trial based on newly discovered exculpatory DNA testing evidence under § 29-2101(6) (Cum. Supp. 2002) during pendency of appeal of denial of motion to vacate and set aside judgment under DNA Testing Act). Harris asserts not only that the district court was permitted by *Smith* to consider his motion for new trial separately from the postconviction issues on remand, but that our holding in *Harris IV* required the court to consider the motion for new trial first. In *Harris IV* we held that a court presented with a postconviction motion simultaneously with a motion seeking relief under another remedy must first determine whether the defendant is entitled to relief under the nonpostconviction remedy.

However, unlike the present case, neither *Smith* and its progeny nor *Harris IV* involved the lower court's implementation

of an appellate court's mandate on remand. In *Smith*, we observed that the trial court was not required to delay the exercise of its original jurisdiction to consider the motion for new trial because "no such restriction of power is declared" by the Legislature or by our jurisprudence. 167 Neb. at 494-95, 93 N.W.2d at 501. But our mandate in the instant case introduced restrictions that barred the district court from considering Harris' motion for new trial before it carried out our mandate.

Our mandate jurisprudence is clear: A trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. See *State v. Payne*, 298 Neb. 373, 904 N.W.2d 275 (2017). And, as noted above, we have consistently held that when a lower court is given specific instructions on remand, it must comply with the specific instructions and has no discretion to deviate from the mandate. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). Allowing expansion of the issues on remand in this manner would not serve the public interest in finality of the litigation process. See *Jurgensen v. Ainscow*, 160 Neb. 208, 69 N.W.2d 856 (1955). We applied these principles in *State v. Henk*, 299 Neb. 586, 909 N.W.2d 634 (2018), where our mandate required the district court to conduct an evidentiary hearing on a single postconviction claim. On remand, the district court gave the defendant leave to amend his motion for postconviction relief to add an additional claim, conducted an evidentiary hearing on both claims, and denied postconviction relief. On appeal, we held that a defendant cannot be allowed to assert new claims on remand when he or she is entitled to an evidentiary hearing on other claims and that the district court acted outside the scope of our mandate. See, also, *State v. Shelly*, 279 Neb. 728, 782 N.W.2d 12 (2010). For the same reasons, the district court in this case was required to follow the directives of our *Harris V* mandate first, before entertaining any subsequent motions. This it did not do.

As we have explained, *Harris V* required the district court to clarify whether its previous order had addressed the second motion or third amended motion for postconviction relief; to consider Allgood's statements in the context of the postconviction motion from which Harris had appealed; and, if necessary, to rule on Harris' claims raised in the third amended motion for postconviction relief regarding Hicks' plea agreement. The district court clarified that its previous order addressed Harris' second motion, but failed thereafter to comply with our mandate. It did not consider Allgood's statements in the context of a postconviction motion as we directed, and it did not rule on Harris' claims raised in the third amended motion for postconviction relief regarding Hicks' plea agreement.

[14,15] Because everything in the district court's September 21, 2017, order, aside from the court's clarification that its previous order addressed Harris' second postconviction motion, did not comply with our mandate in *Harris V*, we have no choice but to vacate it. The district court's subject matter jurisdiction immediately upon remand was limited to carrying out our mandate. See *State v. Payne, supra*. And "[n]o judgment or order different from, or in addition to, the appellate mandate can have any effect." *Id.* at 379, 904 N.W.2d at 280. Because a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court, any order attempting to do so is entered without jurisdiction and is void. *Id.* In breaching our mandate, the district court acted outside its jurisdiction and entered a void order, which we have the power to vacate. See *In re Interest of Trey H.*, 281 Neb. 760, 798 N.W.2d 607 (2011).

Based on the reasons above, we vacate the September 21, 2017, order, with the exception of the finding that the order appealed from in *Harris V* addressed the second motion for postconviction relief, and remand the cause for compliance with this court's mandate in *Harris V*. To comply with our mandate in *Harris V* and this opinion, the district court shall consider Harris' postconviction claim based on Allgood's

statements and the claim in his third amended motion regarding Hicks' plea agreement. With the aforementioned exception, the vacated portion of the order encompasses every factual and legal finding made by the district court, including those pertaining to the motion for new trial; and because none of these vacated findings were within the district court's subject matter jurisdiction to decide, they shall not operate as the law of the case on remand.

### (b) Discharge Order

#### (i) State's Right to Direct Appeal

We now turn to the order granting Harris' motion for discharge on speedy trial grounds. As with the new trial order, we must first determine whether the State has the right to challenge it with a direct appeal. We conclude that it does.

As with the new trial order, Harris relies on the principle that absent specific statutory authorization, the State generally has no right to appeal an adverse ruling in a criminal case. Harris claims this precludes the State's direct appeal of the discharge order. But whatever merit Harris' argument might have if the State were appealing an ordinary order granting a defendant's motion for absolute discharge, it must be recalled that the order that purported to grant the new trial in this case was void. Because a void order has no legal effect, this did not effectively become a criminal case, and thus the principle Harris invokes is inapplicable.

As we have explained, the district court was permitted to act within a limited scope on remand from *Harris V*. The only matter properly before the court at that time was the resolution of Harris' postconviction claims. That is, the district court was conducting postconviction proceedings. Because the new trial order was void and had no effect, it could not effectively change the nature of the postconviction proceedings. We have allowed the State to file a direct appeal from postconviction proceedings. *State v. Thieszen*, 295 Neb. 293, 887 N.W.2d 871 (2016). Therefore, we conclude that the discharge order is

reviewable on direct appeal by the State, provided it is a final, appealable order and is timely appealed.

### (ii) Timely Appeal of Final, Appealable Order

As we have already said, for an appellate court to acquire jurisdiction of an appeal, there must be a final order or final judgment entered by the court from which the appeal is taken. *State v. Paulsen*, 304 Neb. 21, 932 N.W.2d 849 (2019). We conclude that like the new trial order, the order granting discharge is a type of final order: an order affecting a substantial right made during a special proceeding. See § 25-1902.

The district court purported to grant discharge in what was, in reality, still a postconviction proceeding. And we have long held that postconviction proceedings are special proceedings. See, *State v. Thieszen, supra*; *State v. Silvers*, 255 Neb. 702, 587 N.W.2d 325 (1998).

Furthermore, we conclude that an order granting discharge on speedy trial grounds affects a substantial right of the State. When the State has invested the time and resources to charge an individual with a crime, it has an interest in the accused's proceeding to trial and not being discharged improperly. See *State v. Sumstine*, 239 Neb. 707, 478 N.W.2d 240 (1991) (recognizing public interest in obtaining convictions of persons who have committed criminal offenses against State). Absent an appeal from the order granting discharge, this right of the State could not otherwise be vindicated, see *State v. Fredrickson*, 305 Neb. 165, 939 N.W.2d 385 (2020), because the State cannot bring the same charges again. See Neb. Rev. Stat. § 29-1208 (Reissue 2016) (providing for "absolute discharge from the offense charged"). Accordingly, the order granting discharge was a final order under § 25-1902 because it was made during a special proceeding and affected a substantial right of the State.

We further determine that the State timely appealed the discharge order. The discharge order was entered on February 4,

2019. The State filed its notice of appeal on February 8, well within the 30-day period prescribed by § 25-1912(1), and as we have already noted, the required docket fee was timely deposited. Thus, as to the discharge order, the State timely perfected its direct appeal.

We note that we are not persuaded by Harris' argument that the discharge order is not final based on the order that granted the State's request for a stay. He asserts that "to the extent that the February 4, 2019[,] order has stayed the implementation of Harris' discharge past the date of filing the appeal or is conditioned upon the filing of an appeal, the February 4th order remains stayed and is not a final, appealable order." Brief for appellee at 6. However, when the district court purported to discharge Harris, no further action was required to completely dispose of the cause; the order was final. Compare *State v. Warner*, 290 Neb. 954, 863 N.W.2d 196 (2015) (order sustaining defendant's motion to quash gave State 7 days to file amended information; State appealed, and we determined that order was not final because order did not discharge defendant). This argument lacks merit.

### (iii) Disposition of Discharge Order

Having determined that we have jurisdiction to review the discharge order, we now consider it. Generally, a trial court's determination as to whether charges should be dismissed on speedy trial grounds is a factual question which will be affirmed on appeal unless clearly erroneous. *State v. Lovvorn*, 303 Neb. 844, 932 N.W.2d 64 (2019). But in this case, as we will explain, there is a legal issue we must address first.

When the order granting Harris' absolute discharge is considered in light of everything we have already said, it quickly becomes clear that we must vacate it. Under § 29-1207, a defendant may be discharged if he or she is not brought to trial for a charged offense within a certain time period following, among other things, an order for a new trial. Here, however, we have already concluded that the order granting the new trial was void. Harris cannot claim a right to discharge for not

being speedily tried when the order that purported to grant him a new trial was a nullity.

If that were not enough, the order of discharge itself was also outside the scope of our mandate in *Harris V*. As explained above, after receiving a mandate, a trial court is without power to affect rights and duties outside the scope of the remand from an appellate court. *TransCanada Keystone Pipeline v. Tanderup*, 305 Neb. 493, 941 N.W.2d 145 (2020). Even when Harris moved for absolute discharge, the district court was still subject to the strictures of our mandate in *Harris V*. It clearly acted outside of that mandate when, rather than following our instructions regarding Harris' claims for postconviction relief, it purported to grant absolute discharge based on a new trial order that was issued outside the scope of our mandate. So, like the bulk of the new trial order, the discharge order was void. See *TransCanada Keystone Pipeline v. Tanderup, supra*.

The foregoing illustrates the error made by the district court when it concluded the State's challenge to the order granting Harris a new trial was moot in light of its ruling on Harris' motion for absolute discharge. Harris' right to discharge depended on the validity of the order granting him a new trial. At the time of Harris' motion for discharge, the issue of whether the new trial order was valid continued to exist and required resolution. See *State v. Dunster*, 278 Neb. 268, 769 N.W.2d 401 (2009) (case becomes moot when issues initially presented cease to exist or when litigants seek to determine question which does not rest upon existing facts or rights).

For these reasons, we vacate the order that granted Harris absolute discharge and remand the cause with instructions to reinstate his convictions and sentences.

### 2. Case No. S-19-130:
### Exception Proceedings

Having resolved all the relevant issues presented by the parties in the appeal docketed as case No. S-19-133, we dismiss case No. S-19-130 as moot. See *State v. Dunster, supra*.

## V. CONCLUSION

Litigation regarding Harris' convictions and sentences has lasted many years. And, for a number of reasons, it has become complex. Under these circumstances, one might wonder whether our decision today—which vacates multiple orders entered over the course of several years and largely returns this case to where it stood when we remanded it to the district court in 2017—contributes to advancing the matter to a resolution of some kind. While perhaps an understandable question, it is not a legally relevant one. As we have explained, the district court entered void orders under our law and we are obligated to vacate them. See *DeLima v. Tsevi*, 301 Neb. 933, 946, 921 N.W.2d 89, 98 (2018) ("[s]o while it is certainly regrettable that the significant time and energy devoted to litigating [an issue] was all for naught, upon its correct determination that it never had subject matter jurisdiction, the district court had no choice but to vacate its prior custody orders").

Accordingly, in case No. S-19-133, we vacate the district court's order granting Harris a new trial and remand the cause for further proceedings in compliance with this decision and our mandate in *Harris V*. We also vacate the order granting absolute discharge and remand the cause with directions to reinstate Harris' convictions and sentences. In case No. S-19-130, we dismiss the State's exception proceedings as moot. In light of these dispositions, we need not address the parties' remaining arguments.

Appeal in No. S-19-130 dismissed.
Judgment in No. S-19-133 vacated, and
cause remanded with directions.

Heavican, C.J., and Freudenberg, J., not participating.